## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE RILEY | : | CIVIL ACTION |
| Plaintiff, | : | Case No. 13-7205 |
| v. | : | |
| ST. MARY MEDICAL CENTER | : | |
| Defendant. | : | |

### ORDER

**AND NOW,** this _____ day of _____, 2014, upon consideration of Defendant's

Motion to Dismiss Plaintiff's Complaint pursuant to Fed. Rule Civ. P. 12(b)(6) and Plaintiff's

Response in Opposition thereto, it is hereby **ORDERED** that Defendant's Motion is **DENIED**.



**The Hon. Curtis Joyner, U.S.D.J.**

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND.................................................................. 1

III.   LEGAL ARGUMENT............................................................................ 4

A.  Legal Standard.................................................................................. 4

B.  Plaintiff does not assert any claims under the ADA or ADEA for Discrete Acts that occurred more than 300 days before she filed her Charge of Discrimination. ........................ 5

C.  Plaintiff does not assert any claims under the PHRA for Discrete Acts that occurred more than 180 days before she filed her Charge of Discrimination.......................................... 6

D.  Plaintiff's hostile work environment claims permit recovery for any conduct that was part of the hostile work environment, regardless of time, as stated by the Continuing Violation Doctrine.................................................................................... 7

E.  Plaintiff has pleaded sufficient facts to state a claim for age discrimination under the ADEA and the PHRA. .................................................................................. 9

F.  The ADEA and the PHRA recognize age-based hostile work environment causes of action. ............................................................................................ 13
    *1.   The ADEA provides a cause of action for hostile work environment claims*................... 14
    *2.   A cause of action exists for an age-based hostile work environment under the PHRA*..... 20
    *3.   Plaintiff has adequately pleaded an age-based hostile work environment claim under the ADEA and the PHRA*................................................................................... 21

G.  Plaintiff has pleaded sufficient facts to state a claim for age-based retaliation under the ADEA and PHRA. ............................................................................... 24

H.  Plaintiff's Complaint does not contain any requests for damages under the ADEA that could be stricken. ................................................................................. 27

I.  Plaintiff has pleaded sufficient facts to state a claim for disability discrimination under the ADA and the PHRA. ......................................................................... 27
    *1.   Plaintiff has alleged a disability under the ADA and PHRA.*............................................ 31
    *2.   Plaintiff's "regarded as disabled" and "recorded as disabled" claims are sufficiently alleged in this early pre-discovery stage of litigation.*............................................ 33
    *3.   Plaintiff has alleged that her employment was terminated due to her disability.*.............. 34

J.  Plaintiff has sufficiently pleaded enough facts to establish that her employment with Defendant was terminated in retaliation for her complaints of disability discrimination... 37

K.   Plaintiff has pleaded sufficient facts to state a claim for a disability-based hostile work environment.................................................................................................... 39

L.   Plaintiff's Complaint does not request compensatory, punitive, or emotional distress damages with respect to her ADA retaliation claim. ............................................. 42

M.   Plaintiff's Complaint does not request punitive damages under the PHRA. ............... 42

N.   If this Court finds that Plaintiff has not sufficiently pleaded enough facts for any or all of her claims, Plaintiff requests the right to amend her complaint...................................... 42

IV.   CONCLUSION ................................................................................................ 43

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENISE RILEY | : | CIVIL ACTION |
| Plaintiff, | : | Case No. 13-7205 |
| v. | : | |
| ST. MARY MEDICAL CENTER | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Denise Riley, *hereinafter* referred to as "Plaintiff", by and through her undersigned counsel, hereby responds as follows to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint:

## I.   **Introduction**

Plaintiff filed a Complaint in this Court on December 11, 2013.  Plaintiff later filed her First Amended Complaint on February 20, 2014. In her First Amended Complaint (*hereinafter* "Complaint"), Plaintiff alleges that she was discriminated against and subjected to a hostile work environment because of her age, disabilities, and complaints of age/disability discrimination by Defendant St. Mary's Medical Center's (*hereinafter* "Defendant") management. Plaintiff also asserts in her Complaint that she was retaliated against (by way of termination) due to her complaints of age/disability discrimination.

## II.   **Factual Background**

Plaintiff was employed as a Registered Nurse by Defendant for approximately 10 years. *See* Complaint, attached hereto as "Exhibit A" at ¶11. Plaintiff had received favorable performance reviews throughout the majority of her employment with Defendant. Exhibit A at

¶12. Plaintiff suffers from several disabilities including but not limited to colitis, anxiety, insomnia, and other cognitive disabilities. Exhibit A at ¶30. Plaintiff's aforementioned disabilities, at times, limit her ability to enjoy several life activities including but not limited to sleeping, concentrating, communicating, and thinking. Exhibit A at 31¶.

In or about 2009, Plaintiff informed Defendant's management of her aforementioned disabilities. Exhibit A at ¶31. Approximately around the same time that Plaintiff informed Defendant's management of her disabilities, Plaintiff began to be supervised by a new manager, Susan Snyder. Exhibit A at ¶13. While under the supervision of Ms. Snyder, Plaintiff was ostracized and treated differently than her younger non-disabled co-workers. Exhibit A at ¶13-15. For example, while under the supervision of Ms. Snyder, a younger, non-disabled nurse often made inappropriate comments about Plaintiff's age and even intimidated her with violence. Exhibit A at ¶16-17. Plaintiff reported this harassment to Ms. Snyder, but neither Ms. Snyder nor Defendant properly investigated or resolved Plaintiff's concerns in any meaningful way. Exhibit A at ¶18. Although Plaintiff was the one being harassed and mistreated by this younger, non-disabled nurse, Plaintiff was the only one reprimanded for these incidents. Exhibit A at ¶ 19. Because Plaintiff's management did not properly investigate or resolve her concerns of discrimination (as discussed *supra*), Plaintiff further complained to human resources about such discriminatory conduct. Exhibit A at ¶19.

The hostility that Plaintiff experienced from Defendant's management (as discussed *supra*) continued even after Ms. Snyder was replaced. After Ms. Snyder separated from Defendant in or about 2010, a temporary manager told her that she was "a rat" because she had complained to Human Resources regarding the aforementioned discriminatory conduct and that she needed "to play nice in the sandbox." Exhibit A at ¶20.

2

When Ms. Snyder was replaced, Plaintiff (1) received an abysmal annual evaluation from her newest manager, Joyce Roman, the majority of which contained inaccurate information;[1] (2) was denied a raise, unlike the majority (if not all) of the other nurses in her department; and (3) had her duties as a "Charge Nurse" assigned to a younger nurse who was approximately 26 years old. Exhibit A at ¶¶22-23, 25-26. Notwithstanding the aforementioned discriminatory treatment, Plaintiff continued to be ostracized and treated in a discriminatory manner until she was terminated from Defendant in January of 2013. Exhibit A at ¶29.

On or about January 3, 2013, Plaintiff was terminated in close proximity to her last complaints of discrimination. Exhibit A at ¶41. Additionally, approximately one week before her termination, a younger, non-disabled replacement was hired for Plaintiff's position. Exhibit A at ¶28.

Overall, Plaintiff was an employee who performed her job well and had received acceptable performance reviews throughout the majority of her 50's, most of which she spent working for Defendant. As Plaintiff began to approach the age of 60 and soon after she had informed Defendant's management of her health conditions, she started to be selectively disciplined, given false performance evaluations, and had her job duties assigned to younger replacements. Plaintiff continued to be ostracized and singled out up until the time her termination, which prompted her make complaints of discrimination to Defendant's management.

---

[1] Plaintiff acknowledges that ¶23 contains a typographical error in which the last word of the sentence was inadvertently deleted; however, Plaintiff asserts that this error is obviously accidental and ¶23 clearly means to indicate that Plaintiff's performance review was inaccurate.

### III.    Legal Argument

#### A.  Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n. 7 (3d Cir. 2002)). In a complaint, a district court is supposed to accept not only all allegations as true but all inferences arising from the allegations as true. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *See also Fullman v. Pennsylvania Dept. of Corrections*, 265 Fed. Appx. 44 (3d Cir. 2008).

Since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard has changed slightly. The Third Circuit has revisited the pleading standard since *Twombly* and has determined that "under our reading [of Twombly], the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 233 (internal citations omitted). Put simply, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up as follows: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a

4

reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (internal citations removed).

The Court must consider the Complaint in its entirety and review the allegations as a whole and in context. *Iqbal,* 129 S.Ct. at 1950. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. *Winer Family Trust v. Queen,* 503 F.3d 319, 327 (3d Cir.2007).

Despite Defendant's suggestion that Plaintiff is required to prove her entire case within her Complaint, the law clearly does not require her to do so. Once again, Plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff has sufficiently pled enough facts which could give rise to an inference that Defendant violated the law.

### B. Plaintiff does not assert any claims under the ADA or ADEA for Discrete Acts that occurred more than 300 days before she filed her Charge of Discrimination.

Plaintiff's discrimination and retaliation claims (as opposed to her hostile work environment claims) only seek recovery for actions that fall well within the statutory period, as Plaintiff was terminated from Defendant on or about January 3, 2013 and she filed her Charge of Discrimination on or about February 15, 2013. Exhibit A at ¶ 26; *see also* Plaintiff's Charge of Discrimination, attached hereto as "Exhibit B." As Defendant's Motion concedes, any discreet action that took Place after April 21, 2012 would not be time barred. *See* Defendant's Motion to Dismiss Plaintiff's First Amended Civil Action Complaint (*hereinafter,* "Defendant's Motion") at 7. Thus, Plaintiff's termination (which forms the basis of her discrimination and retaliation claims) clearly falls within the applicable limitations period.

Plaintiff has not raised any discrimination and/or retaliation claims in her Complaint that fall outside of the statutory period. Defendant focuses on paragraphs 49 and 27 of Plaintiff's Complaint because those paragraphs list adverse employment actions that Defendant's management inflicted on Plaintiff during her employment with Defendant. *See* Defendant's Motion at 7-8. The quoted paragraphs **explicitly** identify those actions as part of a hostile work environment, not as discrete acts that are individually recoverable. Plaintiff's discrimination and retaliation claims, as stated in her First Amended Complaint, center around her termination and are therefore timely.

It is unclear what Defendant wishes to "time bar" in Plaintiff's Complaint. If Defendants' motion aims to preclude discovery on issues that took place before the limitations period, Plaintiff asks that it be denied, as such objections are premature at this stage and should be raised within interrogatories and document requests like in any other employment matter.

### C. Plaintiff does not assert any claims under the PHRA for Discrete Acts that occurred more than 180 days before she filed her Charge of Discrimination.

Plaintiff's charge of discrimination was timely filed with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff dual filed her EEOC Charge of Discrimination with the PHRC. *See* Exhibit B. The PHRC requires that a charge be filed within 180 days of the discriminatory conduct for which relief is sought. *See* 43 Pa. Stat. Ann. § 959(h). As discussed *supra*, Plaintiff filed her Charge of Discrimination less than sixty (60) days after her termination. Thus, Plaintiff's charge was clearly filed in a timely manner with the PHRC.

Plaintiff's claims based on the Pennsylvania Human Relations Act ("PHRA") mirror her claims under the ADA and ADEA. Plaintiff's Complaint alleges identical violations under the PHRA and the federal statutes. *See* Exhibit A at ¶52. For the same reasons already enumerated

above,[2] Plaintiff's PHRA claims are in no way time barred and Plaintiff asks that Defendant's Motion be denied.

### D. Plaintiff's hostile work environment claims permit recovery for any conduct that was part of the hostile work environment, regardless of time, as stated by the Continuing Violation Doctrine.

All discriminatory actions taken against Plaintiff because of her age or disability, which form the basis of her hostile work environment claims, are actionable notwithstanding the applicable limitations periods, as such actions are part of a continuing violation which ultimately resulted in the final discriminatory act (i.e. Plaintiff's termination). Because Plaintiff's termination (i.e. the final discriminatory act of Defendant's continuing violation) clearly falls within the applicable limitations period, any discriminatory actions which led up to that point are clearly actionable.

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *AMTRAK v. Morgan*, 536 U.S. at 105 (explaining *a court may consider "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period"*) (emphasis added))); *See also Nott v. Reading Hosp. & Med. Ctr.*, 2012 U.S. Dist. LEXIS 34140, 26 (E.D.Pa. 2012) ("*under a continuing violation theory, a plaintiff's hostile environment claim is not time-barred "so long as all acts which constitute*

---

[2] *See* Section III(B), *supra.*

*the claim are part of the same unlawful employment practice and at least one act falls within that time period.*").

The hostile work environment inflicted on Plaintiff clearly extended into the applicable limitations period, as the discriminatory and retaliatory termination (i.e. the final discriminatory act of Defendant's continuing violation) of Plaintiff's employment with Defendant occurred on or about January 3, 2013. Exhibit A at ¶26. Plaintiff also asserts in her complaint that she was treated in a discriminatory manner and singled out by Defendant's management up until her termination.. *Id.* at ¶29. Plaintiff's termination was the final and foreseeable conclusion of the hostile work environment that she had been subjected during the end of her employment with Defendant. Because the hostile work environment that Plaintiff was subjected to *continued into the applicable limitations period*, all actions that were part of that hostile work environment should be considered timely.

Defendant's brief seems to incorrectly argue that a termination cannot be the timely act of a hostile work environment under the continuing violation theory. Defendant accuses Plaintiff of "mixing apples and oranges" and making "no sense," but it seems that Defendant is truly the one that is confused. *See* Defendant's Motion at 10, note 11. Defendant argues that untimely discrete acts cannot serve as a basis for any claims of harassment, but this is an inaccurate statement of the law. For example in *Nott v. Reading Hospital and Medical Center*:

> Plaintiff filed her charge of discrimination with the EEOC...**exactly 300 days** from the date she was terminated. Plaintiff asserts a hostile work environment claim under the continuing violation doctrine and alleges that Defendant's conduct that occurred prior to the termination supports her religious [hostile work environment] claim... **Plaintiff's termination occurred within the applicable time period. Thus, Plaintiff's [hostile work environment] claim is timely and other acts that occurred outside of the limitations period may be considered to support her claim.** To the extent

8

> those untimely acts are discrete acts…those acts are time-barred. **We may, however, consider those untimely discrete acts for evidentiary purposes to evaluate Plaintiff's [hostile work environment] claim.** *See McCann v. Astrue*, 293 F. App'x 848, 850 & n.3 (3d Cir. 2008) (stating that untimely discrete discriminatory acts "may not be aggregated under a continuing violation theory," but "[t]hey may, however, be used as background evidence to support timely claims").

*Nott v. Reading Hosp. & Med. Ctr.*, 2012 U.S. Dist. LEXIS 34140, 26 (E.D.Pa. 2012) (emphasis added). In *Nott*, the only action that was within the 300 day limitations period was the plaintiff's termination, yet the court held that the plaintiff's hostile work environment claims were timely. Additionally, the court noted that untimely discreet acts could be used as evidence of a hostile work environment claim.

Plaintiff alleges that she subjected to a hostile work environment during her employment with Defendant which eventually culminated in her termination. Plaintiff's Complaint clearly lists discriminatory adverse actions taken against Plaintiff and specifically identifies them as evidence of a hostile work environment. *See* Exhibit A at ¶¶ 39, 47. Plaintiff's pleading is directly supported by the above-referenced case law. In light of the foregoing, Defendant's argument is entirely without merit and Defendant's Motion should be denied.

### E. Plaintiff has pleaded sufficient facts to state a claim for age discrimination under the ADEA and the PHRA.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When the plaintiff alleges unlawful discharge based on age, the *prima facie* case requires proof that: (1) the plaintiff was a member of the protected class, i.e., was 40 years of age or older; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the job; and (4) the plaintiff was

9

replaced by a sufficiently younger person to create an inference of age discrimination. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)(citing *Sempier v. Johnson*, 45 F.3d 724, 728 (3d Cir. 1995)).

The prima facie case [for an ADEA claim] requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ." *Teamsters v. United States,* 431 U.S. 324, 358, (1977). The Third Circuit Court of Appeals has stated that, in the ADEA context, "'the requirements of the prima facie case are flexible and must be evaluated in light of the particular circumstances of the case before the court. This applies with particular force to the fourth element of the prima facie case of discrimination." *Kuzdrowski v. Nicholson*, 314 Fed. Appx. 410, 413 (3d Cir. 2008) (internal citations omitted) (quoting *Pivirotto*, 191 F.3d at 357). "This jurisprudence favors flexibility in formulating *prima facie* cases, applies *Pivirotto's* rationale to ADEA cases, and imposes a more relaxed standard for the fourth element of a plaintiff's *prima facie* case under the ADEA.

A plaintiff may prove this fourth element by establishing circumstances that give rise to a fair inference of unlawful discrimination, and ***may*** include replacement by a significantly younger employee *or* more favorable treatment of similarly situated individuals outside the protected class. We presume that our Court of Appeals, when it has expressed a more restrictive formulation of this test, did so in light of the specific circumstances of the cases then under consideration." *Johnson,* 2012 U.S. Dist. LEXIS 35732 at *16  (EDPA 2012) (emphasis added). Thus, this fourth element can be established in a variety of ways, including but not limited to evidence of disparate treatment or discriminatory comments or conduct. *Johnson v. Del. County Juvenile Det. Ctr.*, 2012 U.S. Dist. Lexis 35732, *16 (EDPA 2012).

In this case, Plaintiff's Complaint sets forth more than sufficient factual assertions which give rise to a plausible inference of age discrimination. She can easily establish the prima facie elements of her claim. She is 62 years old. Exhibit A at ¶6. She was qualified for the position, as she had held it for 10 years. Exhibit A at ¶11. She was fired and was replaced by a sufficiently younger employee, thus giving rise to an inference of discrimination. Exhibit A at ¶28. Plaintiff also had experienced hostility over the last several years of her employment leading up to her termination that she reasonably believes was based on age.[3]

The first three elements of Plaintiff's prima facie case are not disputed at this stage of the ligation. Defendant's motion only attacks the fourth element of the *prima facie* case: that the circumstances of Plaintiff's termination give rise to an inference of age discrimination. Plaintiff's allegation that she was replaced by a significantly younger nurse is sufficient to support a *prima facie* case of age discrimination on its own. Similarly, Plaintiff's allegations, which make up her hostile work environment claim (as discussed *supra*), would support an inference of discrimination even if Plaintiff had not been replaced by a younger employee (which she clearly was). Either of the aforementioned theories provide adequate support for Plaintiff's age discrimination claim.

Plaintiff has adequately pleaded that a significantly younger replacement was hired approximately one week before her termination. Defendant's motion argues that this allegation should not be credited because it is "formulaic allegation." Defendant's Motion at p. 13. This contention is entirely false. First, Defendant admits that pleading on information and belief is permissible under *Twombly/Iqbal*. *Id.* Second, the cases that Defendant cite, to further support their argument, are cases in which the Court dismissed claims because they lacked "factual

---

[3] Plaintiff herein incorporates by reference SectionIII(F)(3), *infra*, which sets forth at length the harassment that she was subjected to because of her advanced age.

content" and merely were a "formulaic recitation of the elements of a cause of action." Plaintiff could discuss and distinguish each of these cases individually, but it seems more appropriate to point to the clear factual content in the actual allegation that is being presented.

First, it is important to note that a younger replacement is not an element of an age discrimination claim, it is a fact. Additionally, Plaintiff has alleged the timeframe in which the replacement was hired (approximately one week before her termination). Plaintiff has pleaded "upon information and belief" because Defendant is in the best position to determine the exact name, age, and hire date of the individual. Defendant attacks Plaintiff for lacking specificity, but Plaintiff implores this Court to consider exactly what specificity Defendant requires. Is Plaintiff to believe that her claim cannot survive if she cannot recall the name, age, and hire date of a person who she worked with for only one week? Plaintiff's allegation is unequivocally factual, not conclusory. When accepted as true, as this *factual* allegation must be, Plaintiff has clearly satisfied the pleading requirements of her age discrimination claims.

Although Plaintiff has already pointed to sufficient evidence to support the fourth element of her age discrimination claim by establishing that she was replaced by a younger individual, Plaintiff has also asserted sufficient facts to show that the harassment that she experienced over the last several years of employment give rise to an inference that her termination was based on her age. Defendant argues that these acts are precluded by the applicable limitations period and are therefore irrelevant. *See* Defendant's Motion at Section III(D). Plaintiff will not belabor this Court with the facts, circumstances, and legal theories that permit her to recover pursuant to an age-based hostile work environment claim as they have already been discussed at length in this brief. *See* Section III(D), *supra*; Section III(F), *infra*.

Assuming, *arguendo*, that the acts, which form Plaintiff's hostile work environment claims, are time barred, Plaintiff asserts that such acts would still be evidence of discrimination that gives rise to an inference of age discrimination. *See McCann v. Astrue*, 293 F. App'x 848, 850 & n.3 (3d Cir. 2008) (stating that untimely discrete discriminatory acts "may not be aggregated under a continuing violation theory," but "[t]hey may, however, be used as background evidence to support timely claims").

Based on the foregoing, Plaintiff was clearly terminated under circumstances that gives rise to an inference of discrimination; therefore, Defendant's Motion must be denied.

### F. The ADEA and the PHRA recognize age-based hostile work environment causes of action.[4]

Age-based hostile work environment claims exist under both the ADEA and the PHRA. Every circuit court that has directly addressed whether the ADEA can support a claim for a hostile work environment has found that it can. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (Expressly holding that the ADEA supports hostile work environment claims); *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) ("[W]e find it a relatively uncontroversial proposition that such a theory is viable under the ADEA"). Most courts assume that a hostile work environment cause of action exists under the ADEA without explicitly deciding the issue.[5] Defendant does not point to a single case that holds that hostile work environment claims are inappropriate under the ADEA or the PHRA. *See* Defendant's Motion at 14-15. Defendant's motion to dismiss must be denied.

---

[4] Because the Third Circuit has not explicitly decided this issue, Plaintiff has included a detailed analysis of the applicable law.
[5] *See* Section III(F)(a), *infra*.

### 1. The ADEA provides a cause of action for hostile work environment claims.

The ADEA provides a cause of action under a hostile work environment theory. The Supreme Court of the United States originally reasoned that a hostile work environment claim was intended by Congress under Title VII due to the plain language of the statute. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). As discussed *infra* the language of Title VII relied on by the Supreme Court is identical to the language of the ADEA. *Compare* 42 U.S.C. § 2000e-2(a)(1) *with* 29 U.S.C.S. § 623 (a) (1). In the most substantial opinion regarding this particular issue, the Fifth Circuit held that the language of the ADEA was sufficiently analogous to that of Title VII, thus supporting the theory that the ADEA does support a hostile work environment claim. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). This rationale is the most logical interpretation of hostile work environment claims under the ADEA.

### a. The Supreme Court has recognized hostile work environment claims due to the plain language of Title VII.

The Supreme Court has justified the existence of hostile work environment claims under Title VII based on the plain language of the statute. Title VII states, in relevant part, that it shall be an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, ***terms, conditions, or privileges of employment***, because of such individual's [protected class]" 42 USCS § 2000e-2 (emphasis added). The Supreme Court has reasoned that "[t]he phrase '***terms, conditions or privileges of employment***' in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)) (emphasis added). "Accepting *Meritor's* interpretation of the term 'conditions of employment' as

14

the law, the test [to determine if a hostile work environment is actionable] is not whether work has been impaired, but whether ***working conditions*** have been discriminatorily altered." *Harris v. Forklift Sys.*, 510 U.S. 17, 25 (1993) (Scalia, J., concurring) (emphasis added). It is clear that the Supreme Court determined that a cause of action existed for a hostile work environment under Title VII based on the plain language of the statute.

     b.  *The ADEA and Title VII have sufficiently similar language to apply the standards for a Title VII hostile work environment to ADEA claims.*

The ADEA features the same exact language that the Supreme Court has used to recognize hostile work environment claims under Title VII. The ADEA states that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, ***terms, conditions, or privileges of employment***, because of such individual's age." 29 U.S.C.S. § 623 (a) (1). The above-cited language under the ADEA is essentially identical to the language of Title VII which the Supreme Court analyzed in confirming that a hostile work environment was actionable under Title VII. Such a similarity suggests that the ADEA allows a cause of action for a hostile work environment as well.

The two circuits who have explicitly decided this issue have stated that the ADEA gives rise to hostile work environment claims specifically because of the similarity between Title VII and the ADA. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011); *Crawford v. Medina General Hosp.*, 96 F.3d 830 (6th Cir. 1996). In *Crawford*, the Sixth Circuit became the first Circuit Court to explicitly hold that ADEA could give rise to a hostile work environment claim:

> *[I]n light of the ADEA's employment of the "terms, conditions, or privileges of employment" language, we have no doubt that a hostile work environment claim may be stated.* The broad application of the hostile-environment doctrine in the Title VII context; the general similarity of purpose shared by Title VII and

the ADEA; and the fact that the Title VII rationale for the doctrine is of equal force in the ADEA context, all counsel this result. We thus hold that a plaintiff may advance a hostile-environment claim under the ADEA.

*Crawford*, 96 F.3d at 834. In *Dediol*, the Fifth Circuit adopted the reasoning of the Sixth Circuit in *Crawford* and denied summary judgment on Plaintiff's ADEA hostile work environment claim. *Dediol*, 655 F.3d at 441. These cases recognize the similarity between Title VII and the ADEA to mean that the ADEA provides a hostile work environment cause of action.

Although other courts have not addressed the issue directly, they have assumed that the similarities between the ADEA and Title VII would permit hostile work environment causes of action under the ADEA. These courts often use the framework of a Title VII hostile work environment claim when determining whether the plaintiff was able to establish a hostile work environment claim under the ADEA. *See, e.g. Fugate v. Dolgencorp, LLC*, 2014 U.S. App. LEXIS 1856, 7, note 1, (7th Cir. 2014) ("We have assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA."); *Montgomery v. John Deere & Co.*, 169 F.3d 556 (8th Cir. 1999) (asking an employee when he is going to retire can be evidence of discriminatory harassment); *Peecock v. Northwestern Nat'l Ins. Group*, 156 F.3d 1231 (6th Cir. 1998) (identifying the elements of a hostile work environment under the ADEA as essentially the same as those under Title VII); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104 (9th Cir. 1991) (reversing summary judgment dismissing the plaintiff's ADEA hostile work environment claims); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292 (4th Cir. 1999) (same); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244 (11th Cir. 1997) (upholding a jury verdict based on an ADEA hostile work environment claim).

c. *The Third Circuit, particularly the Eastern District of Pennsylvania, has suggested that ADEA hostile work environment claims do exist.*

Even though the Third Circuit has not explicitly decided this issue, it has assumed that a hostile work environment claim exists under the ADEA. *See Slater v. Susquehanna County*, 465 Fed.Appx. 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, ***analyzed under the same standards as a Title VII hostile work environment claim***") (citations omitted)). The Third Circuit has also provided standard jury instructions for a hostile work environment claim under the ADEA, which mirror those under Title VII. *See* Third Circuit Model Civil Jury Instructions, 8.1.2-3, 8.2.1.

Even without significant direction from the Third Circuit, the Courts of this district have consistently held that the ADEA creates a cause of action for a hostile work environment. *See, e.g. Tate v. Main Line Hosps., Inc.*, 2005 U.S. Dist. LEXIS 1814, 59-60 (E.D. Pa. 2005) ("While our Court of Appeals has not formally recognized hostile work environment claims of age discrimination, other judges of this Court have recognized the potential viability of such a theory." (Dalzell, J.) (citing *Fries v. Metro. Mgmt. Corp.*, 293 F. Supp. 2d 498, 504 (E.D. Pa. 2003) (Joyner, J.); *Tumolo v. Triangle Pac. Corp.*, 46 F. Supp. 2d 410, 412 (E.D. Pa. 1999) (Ludwig, J.)); *Logan v. Countrywide Home Loans*, 2007 U.S. Dist. LEXIS 20088, 39 (E.D. Pa. 2007) ("Although the Third Circuit has not specifically held that a hostile work environment claim is available under the ADEA, district courts in this Circuit have assumed the viability of such a claim.") (Pollak, J.); *Jackson v. R.I. Williams & Assocs.*, 1998 U.S. Dist. LEXIS 8805 (E.D. Pa. June 8, 1998) (identifying elements of an ADEA hostile work environment claim).

  d. *The Supreme Court's decisions in* Gross *and* Nassar *support the interpretation of the ADEA that allows hostile work environment claims.*

The Supreme Court's decisions in *Gross v. FBL Fin. Servs.,* 557 U.S. 167 (2009) and

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517 (2013) support the contention that the

ADEA allows hostile work environment claims because they have the same language. Both cases

suggest that the ADEA and Title VII should be read by their plain language. *Gross,* 557 U.S. at

176; *Nassar,* 133 S.Ct. at 2528. Additionally, in *Nassar,* a case involving claims under Title VII,

the Court specifically adopted the holding from *Gross,* a case involving claims under the ADEA,

because the relevant sections of the two statutes had the same operative language. *Nassar,* 133

S.Ct. at 2528. The language to which Defendant cites is based on the fact that both the ADEA

and Title VII were amended, but the amendments were not the same. *Gross,* 557 U.S. at 174.

The provision that gives rise to a hostile work environment claim has not received such

amendments in either statute.

In *Gross,* the Supreme Court decided that mixed-motive instructions applied in Title VII

cases were not applicable to ADEA discrimination cases due to Congress' amendment of the

Civil Rights Act in 1991. The plaintiff in *Gross* argued that the ADEA should be interpreted in

the same way as Title VII because of their similarities. Both statutes were amended in 1991, but

the sections applying a burden-shifting framework for mixed-motive cases were exclusively

applied to Title VII. The plaintiff argued that the similarities between the statutes controlled

despite the disparate amendments. The Court rejected this argument, stating, "We cannot ignore

Congress' decision to amend Title VII's relevant provisions but not make similar changes to the

ADEA." *Id.* at 174. The Court looked to the plain language of the statute, specifically the

provision that states that it will be illegal to "discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

18

age." 29 U.S.C.S. § 623 (a) (1). The court interpreted "because of" to mean but-for, foreclosing the possibility of mixed-motive claims in ADEA cases. *Gross*, 577 U.S. at 176.

In *Nassar*, the Supreme Court ruled that mixed-motive instructions were not appropriate in Title VII retaliation cases, mainly under the rationale of *Gross*. The Court reasoned that the amendment to Title VII, which was at issue in *Gross*, did not include retaliation, only "status discrimination" (meaning discrimination based on *membership* in a protected class as opposed to retaliation). *Nassar*, 133 S.Ct. at 2532-33. The Court reasoned that because the amendment did not apply, the Court had to look to the plain meaning of the antiretaliation provision, specifically the language "because of." *Id.* at 2528. The Court relied on the way that it had interpreted "because of" in *Gross* (with respect to the ADEA) to decide how "because of" should be interpreted under Title VII. *Id.* Essentially, the court found that because the ADEA and Title VII had identical language, the interpretation made under one statute could be applied to the other.

Although Defendant cites to these two cases as support suggesting that the ADEA and Title VII are not to be interpreted similarly, the Court in *Nassar* clearly interposed a decision about the ADEA onto Title VII based on the fact that they have the same language. It is important to note that in *Nassar*, the Supreme Court compared the ***very sections*** of the ADEA and Title VII that have been looked to with respect to hostile work environment claims. Defendant erroneously attempts to rely on two cases that, in actuality, reinforce the existence of hostile work environment claims under the ADEA.

> e. *Hostile Work Environment claims are actionable under the ADEA despite the ADEA's prohibition of recovery of compensatory damages.*

ADEA hostile work environment claims are cognizable regardless of the ADEA's prohibition on emotional distress damages. Hostile work environment actions can provide recovery of equitable damages. Equitable damages under the ADEA may include back pay, front

pay, liquidated damages, and nominal damages. *See* Third Circuit Model Civil Jury Instructions at 8.4. Hostile work environment actions essentially come in two types: those with a tangible employment action (such as termination) and those without. *Id.* at 8.1.2, 8.1.3. Clearly, a hostile work environment including a tangible employment action (such as termination or failure to promote) would create an entitlement to back pay, front pay, and liquidated damages.

Even if a plaintiff had not suffered any of those economic damages, he or she would still be entitled to nominal damages to recognize a violation of their rights. The Third Circuit has held that civil rights violations are proper grounds for an award of nominal damages. *Id.* at 8.4.5 ("A person whose federal rights were violated is entitled to a recognition of the violation, even if [he] suffered no compensable injury. Nominal damages (of $1.00) are designed to acknowledge deprivation of a federal right, even where no compensable injury occurred."); *see also Basista v. Weir*, 340 F.2d 74, 87-88 (3d Cir. 1965).

### 2. *A cause of action exists for an age-based hostile work environment under the PHRA*

Age-based hostile work environment claims exist under the PHRA. Defendant's Motion asks for dismissal of Plaintiff's age-based hostile work environment claims under both the ADEA and the PHRA, but does not cite to a single source of authority which suggests that the PHRA does not provide a hostile work environment claim. The Courts of this district have consistently held that age-based hostile work environment claims are cognizable under the PHRA. *See Tate v. Main Line Hosps., Inc.*, 2005 U.S. Dist. LEXIS 1814, 60 (E.D. Pa. 2005) (Dalzell, J.); *Fries v. Metro. Mgmt. Corp.*, 293 F. Supp. 2d 498, 504 (E.D. Pa. 2003) (Joyner, J.). Thus, Plaintiff is clearly entitled to bring a hostile work environment claim under the PHRA.

Defendant's main argument seems to be centered on the fact that the ADEA does not allow for the recovery of compensatory damages. However, the PHRA clearly allows for the

recovery of compensatory damages. *See, e.g. Gagliardo v. Connaught Labs.*, 311 F.3d 565 (3d

Cir. 2002) (upholding a $2,000,000 award of compensatory damages under the PHRA). The

PHRA also allows HWE claims to every other protected class. *See, e.g. Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18 (3d Cir. 2006) (analyzing PHRA race-based hostile work environment

claims under a Title VII standard). To suggest that the PHRA does not allow age-based hostile

work environment claims is patently absurd and contrary to well established law.

### 3. Plaintiff has adequately pleaded an age-based hostile work environment claim under the ADEA and the PHRA.[6]

Plaintiff has pleaded sufficient factual allegations to state an age-based hostile work

environment claim under the ADEA and the PHRA. When the Third Circuit assumed that ADEA

hostile work environment claims were viable (as discussed *supra*), the Court applied the same

standards that are used in Title VII. *Slate*, 465 at 138. The Third Circuit has defined the elements

of Title VII hostile work environment as follows:

> (1) [s]he suffered intentional discrimination because of [her] membership in a protected class; (2) the discrimination was pervasive and/or severe; (3) the discrimination detrimentally affected [plaintiff]; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability.

*Verdin v. Weeks Marine Inc.*, 124 Fed. Appx. 92, 95-96 (3d Cir. N.J. 2005) (citing *Kunin v.*

*Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). Courts have consistently held that the

PHRA requires the same elements for a hostile work environment claim. *See Tate v. Main Line*

*Hosps., Inc.*, 2005 U.S. Dist. LEXIS 1814, 60 (E.D. Pa. 2005) (applying the requirements of a

Title VII hostile work environment to the ADEA and the PHRA).

---

[6] Although Defendant's Motion only provides a conclusory argument of this point in a footnote, Plaintiff affirmatively argues that her age-based hostile work environment claims are adequately pleaded.

While Defendant suggests that Plaintiff must prove her entire prima facie case, Plaintiff is not obligated to do so. The United States Supreme Court has stated that a "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (U.S. 2002). The Court in *Swierkiewicz* also stated that "[t]his Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Therefore, a plaintiff claiming employment discrimination need only plead facts sufficient to meet the standard of Federal Rule of Civil Procedure 8(a). *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir.2006)("The marching orders of the Supreme Court in ... *Swierkiewicz* are clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless otherwise specified in the Federal Rules or statutory law.").

After *Swierkiewicz* was decided, the Supreme Court's holding in *Twombly* altered the notice pleading standard. However, the Court itself stated that its holding in *Twombly* did not run counter to *Swierkiewicz*. See *Twombly*, 550 U.S. at 569-70. *Twombly* did not require heightened fact pleading, i.e., it did not require plaintiffs to establish a prima facie case beyond the Rule 8(a) standard. It simply altered the Court's interpretation of Rule 8(a). *Id.* at 570.

Thus, in this case, Plaintiff does not have to meet the standard for a *prima facie* case under *McDonnell Douglas*, but does have to meet *Twombly's* requirement that the facts alleged raise the right to relief above a speculative level. The elements of the prima facie claim do not have to be proven, but merely must be plausible.

Plaintiff has alleged sufficient evidence to allow this Court to infer that she was subjected to a hostile work environment (because of her advanced age) during her employment with

Defendants. Plaintiff has asserted enough factual allegations in her Complaint to allow this court to infer (and therefore, believe as true) that she suffered intentional discrimination because of her membership in a protected class (over 40 years old). For example, Plaintiff has alleged that (1) she was employed by Defendant for approximately 10 years;[7] (2) she received favorable performance reviews throughout the beginning and middle of her employment with Defendant[8]; (3) she was harassed, belittled and ostracized by Defendant's management (Ms. Snyder and Ms. Roman);[9] (4) she was subjected to discriminatory comments and intimidated with violence by a younger nurse;[10] (5) she clearly relayed these concerns to Defendant's management;[11] (6) even after she complained to Defendant's management about her co-worker's (the younger nurse) discriminatory actions, Plaintiff was the one who was reprimanded instead of her co-worker;[12] (7) because her concerns of discrimination were not being properly addressed, Plaintiff complained to Defendant's Human Resources Department about the discriminatory and disparate treatment that she was being subjected to because of her age;[13] (8) despite her repeated complaints to Defendant's management and Human Resources office, Plaintiff continued to be singled out and harassed by Defendant's management because of her age and complaints of discrimination (until the date of her termination), including but not limited to being passed up for raises, given abysmal evaluations, being subjected to retaliatory comments about her complaints of discrimination, and having her duties stripped from her and given to a younger employee.[14]

---

[7] Exhibit A at ¶11.
[8] Exhibit A at ¶12.
[9] Exhibit A at ¶¶ 20, 22-23, 25, 29
[10] Exhibit A at ¶¶15-17.
[11] Exhibit A at ¶18.
[12] Exhibit A at ¶19.
[13] Exhibit A at ¶ 19.
[14] Exhibit A at ¶¶ 20, 22-23, 25, 29.

Thus, based on the foregoing, Plaintiff has more than adequately established that the age-related discriminatory treatment she was being subjected to is both severe and pervasive.

Additionally, Plaintiff has established enough evidence to show that the main discriminators were her managers, and therefore were agents of Defendant. Thus, Defendant is vicariously liable for Plaintiff's management's discriminatory actions.

Moreover, Plaintiff asserted that she complained to management about the discrimination occurring in the workplace and that she wanted the same to cease up to the time of her termination. Exhibit A at ¶29. She then asserts that she was terminated in close proximity to her complaints of discrimination. Exhibit A at ¶41. Therefore, viewing these facts as true, Plaintiff's factual assertions give rise to a plausible inference that she was detrimentally affected by said discrimination.

Overall, Plaintiff was an employee who had received favorable performance reviews throughout the majority of her 50's, most of which she spent working for Defendant. As Plaintiff began to approach the age of sixty (60), she started being selectively disciplined, given false performance evaluations, and had her job duties assigned to younger replacements. Thus, because the aforementioned factual allegations clearly expressed in Plaintiff's Complaint are sufficient to give rise to an inference that Plaintiff was subjected to a hostile work environment because of her age, Defendant's Motion to Dismiss this claim must be denied.

### G. Plaintiff has pleaded sufficient facts to state a claim for age-based retaliation under the ADEA and PHRA.

"In the absence of direct evidence of retaliation, retaliation claims under...the ADEA...typically proceed under the McDonnell Douglas framework." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). A *prima facie* case of retaliation under the ADEA requires the plaintiff to show: (1) she engaged in a protected employee activity; (2) she was subject to an

24

adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *Id.*; *Alred v. Eli Lilly & Co.,* 771 F. Supp. 2d 356, 365 (D. Del. 2011); *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997); *Treaster v. Conestoga Wood Specialties, Corp.,* 2010 U.S. Dist. LEXIS 63257, 98, 2010 WL 2606479 (M.D. Pa. 2010).

A causal connection can be demonstrated through direct evidence or circumstantial evidence. *See Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992). Some plaintiffs establish causation with (1) temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) by showing that the reason for his or her alleged adverse action is pretextual.

In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity.[15] *See Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005) (reversing district court grant of summary judgment because court failed to consider inference created by adverse action within less than three months following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc.,* WL 703395 (W.D. Pa. 2009)(less than 3 months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir.2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to

---

[15] *See Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993) (temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive."). *See also Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir. 1982) (A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."). *See also Nesselrotte v. Allegheny Energy, Inc.,* WL 703395 (W.D. Pa. 2009) (less than three months between protected activity and termination sufficiently established causation element; *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment).

establish causation); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987)(holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment); *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Richard v. Cingular Wireless LLC,* 233 Fed.Appx. 334, 338 (5th Cir.2007) (concluding that two and one half months is a short enough time period to support an inference of a causal link); *King v. Rumsfeld, 328 F.3d 145* (4th Cir. 2003)(2.5 months held to establish a *prima facie* case of retaliation).

Plaintiff has established that she engaged in protected activity, that she suffered an adverse employment action, and that there was continuing hostility in between her protected activity and her adverse action.

First, Plaintiff has affirmatively alleged that she was terminated in January of 2013. Thus Plaintiff has established that she suffered an adverse employment action.

Second, Plaintiff has also asserted that she complained numerous times about the discriminatory treatment that she was being subjected to because of her advanced age. Plaintiff also asserts that such complaints were made up until the point of her termination. Thus, Plaintiff has established that she engaged in protected activity.

Third, Plaintiff has pleaded sufficient facts to establish that there is a causal link between her protected activity and her termination. Plaintiff has clearly alleged that after her complaints of discrimination, she was subjected to discriminatory comments about her complaints, denied raises, and had her duties taken away. Additionally, Plaintiff further asserts that she complained of discrimination up until the point of her termination (thus establishing close temporal proximity between her last complaint of discrimination and her termination. Exhibit A at ¶20-21,

24-26, 29. Plaintiff further alleges that the hostility she was subjected to continued consistently over the last several years of her employment. Exhibit A at ¶29.

Based on the foregoing, Plaintiff has adequately establish enough facts to support her retaliation claim under the ADEA.

### H. Plaintiff's Complaint does not contain any requests for damages under the ADEA that could be stricken.

Plaintiff does not aim to recover punitive or emotional distress under the ADEA. Plaintiff's complaint clearly only seeks damages "as permitted by applicable law." Exhibit A, Wherefore clause at pp 7-8. Plaintiff has alleged violations by Defendant that would permit recovery of punitive and/or emotional distress damages, such as her disability discrimination claim under the ADA. *See* 42 U.S.C. § 12117. Plaintiff's damages are correctly pled, and there is no need to strike anything from the damages portion of the Complaint.

### I. Plaintiff has pleaded sufficient facts to state a claim for disability discrimination under the ADA and the PHRA.

Plaintiff has pleaded sufficient facts to allege that she has an actual and perceived disability as well as a record of that disability. Actual, perceived, and record of disability claims under the ADA and PHRA and are analyzed similarly. *Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010). Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual with a disability is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA

defines a "disability" as: "(A) a physical **or mental impairment** that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2)(emphasis added).

Congress has provided that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  Id. at §3(2)(A) (emphasis added).  Under the broad nature of the ADAAA, Plaintiff has suffered from clearly qualifying disabilities at all relevant times herein due to her mental health conditions.

Claims that an employee was the subject of discrimination because of a disability are evaluated under the familiar *McDonnell Douglas* burden-shifting paradigm. In order to make out a *prima facie* case of discrimination under the ADA, thereby satisfying the first prong of the *McDonnell Douglas* burden-shifting paradigm, a Plaintiff must be able to establish that she: (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (*citing Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

On January 1, 2009, the ADA Amendments Act of 2008 ("ADAAA") became effective. Pub.L. No. 110-325, 122 Stat. 3553. Before the 2008 ADA Amendments Act, the Supreme Court held that the term "substantially limited" needed "to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Manufacturing, Kentucky, Inc., v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

In *Cohen v. CHLN, Inc.*, 2011 U.S. Dist. LEXIS 75404 (E.D. Pa. 2011) (J, Buckwalter),

the Court denied summary judgment to an employer explaining that the protections *of the*

*ADAAA are now exceedingly broad*, stating:

> *Whether an individual is substantially limited in a major life activity is a question of fact. Carraway v. Borough of Wilkinsburg,* No. CIV.A.9–372, 2009 WL 2981955, at *1 (W.D.Pa. Sept.11, 2009) (*citing Williams v. Philadelphia Hous. Auth. Police Dep't,* 380 F.3d 751, 763 (3d Cir. 2004)). Before Congress amended the ADA in 2008, the Supreme Court construed the Act strictly, finding that an individual was 'substantially limited' only if she had 'an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.' *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Court, citing the EEOC's interpretation of the pre-amendment standard, further held that the impairment's impact must be 'permanent or long term.' *Id.* In another leading ADA case, the Court dictated that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 499, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).
>
> With the passage of the ADA Amendments Act of 2008 ("ADAAA"), however, *Congress explicitly rejected Toyota and Sutton and increased the statute's non-exhaustive list of 'major life activities' in an effort to promote a less restrictive interpretation of 'disability.' Pub.L. No. 110–325, §§ 2(b) (1)-(6), 3(2)(a), 122 Stat. 3553, 3555 (2008). In doing so, Congress declared that '[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.'* Pub.L. No. 110–325, § 3(a), 122 Stat. at 3555. To that end, the EEOC's interpretation of the amended ADA notes that 'substantially limits' *is* **'not meant to be a demanding standard.**' 29 C.F.R. § 1630.2(j)(1)(i) (2011). The Commission further opined that even 'effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.' *Id.* § 1630.2(j)(1)(ix). Moreover, the EEOC found that 'whether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.' *Id.* § 1630.2(i)(2). Rather, 'the determination of whether an impairment substantially limits a major life activity requires an individualized

> assessment,' and should 'require a degree of functional limitation
> that is lower than the standard for 'substantially limits' applied
> prior to the ADAAA.' *Id.* § 1630.2(j)(1)(iv).

*Cohen*, at * 6-7. (emphasis added).

In its findings, Congress declared that it was unsatisfied with the manner in which the

original ADA had been applied in the court system. *See* Pub. L. 110-325 § 2(a)(3). Specifically,

Congress found that:

> [T]he holdings of the Supreme Court in *Sutton v. United Airlines, Inc.*, 527 U.S.
> 471 (1999) and its companion cases have narrowed the broad scope of protection
> intended to be afforded by the ADA, thus eliminating protection for many
> individuals whom Congress intended to protect; . . . as a result of these Supreme
> Court cases, lower courts have incorrectly found in individual cases that people
> with a range of substantially limiting impairments are not people with disabilities.

> *Id.* at § 2(a)(4), (6).

Congress went on to declare that it "finds that the current Equal Employment

Opportunity Commission ADA regulations defining the term 'substantially limits' as

'significantly restricted' are inconsistent with congressional intent, by expressing too high a

standard." *Id.* at § 2(a)(8). Thus, Congress's purpose in enacting the Amendments Act was:

> to convey that it is the intent of Congress that the primary object of attention in
> cases brought under the ADA should be whether entities covered under the ADA
> have complied with their obligations, and to convey that the question of whether
> an individual's impairment is a disability under the ADA **should not demand
> extensive analysis** . . . .

Id. at § 2(b)(5) (emphasis added).

Congress further mandated that the definition of disability **"shall be construed in favor

of broad coverage of individuals under this Act, to the maximum extent permitted by the

terms of this Act."** Id. at § 3(4)(A). Congress also enunciated that that "[t]he term

'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA

Amendments Act of 2008." Id. at § 3(4)(B).

### 1. *Plaintiff has alleged a disability under the ADA and PHRA.*

With respect to determining whether an individual is actually disabled within the meaning of the ADA, EEOC Regulations provide that an individual is "substantially limited" in performing a major life activity if the individual is (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). Several factors are to be considered in evaluating whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).[16]

Cognitive disabilities have consistently been recognized as substantially limiting life functions. *See Eshelman v. Agere Systems, Inc.*, 554 F.3d 426 (3d Cir. 2009)(affirming trial verdict for employee asserting discrimination claim because memory problems were sufficiently related to cognitive functions supporting jury's belief that the employee was substantially limited in life functions); *See also Head v. Glacier Northwest Inc.*, 413 F.3d 1053 (9th Cir. 2005)(memory problems are inextricably intertwined with one's ability to think, thus summary judgment was denied as thinking is a life function); *Dvorak v. Clean Water Services*, 319

---

[16] The Third Circuit in *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751 (3d Cir. 2004) explained "'Because the ADA does not define many of the pertinent terms, we are guided by the Regulations issued by the Equal Employment Opportunity Commission ('EEOC') to implement Title I of the Act. *See* 42 U.S.C. § 12116 (requiring the EEOC to implement said Regulations; 29 C.F.R. § 1630.2." *Deane v. Pocono Medical Center*, 142 F.3d 138, 143 n. 4 (3d Cir.1998) (*en banc*) (citations omitted)."

Fed.Appx. 538 (9th Cir. 2009)(district court reversed because Court held there were fact questions as to limitations of employee suffering from chronic migraines).

> *[a plaintiff] does not need to show that his disability is permanent; instead, under the EEOC regulations, the "nature and severity" of [a plaintiff's] impairment and its "duration or expected duration," along with the "permanent or long term impact" of that impairment, are factors to be considered in determining whether an individual is substantially limited in a major life activity.* 29 C.F.R. § 1630.2(j)(2). Because an impairment and its impact may be less than permanent and still "significantly restrict" a person's ability to perform a class of jobs, the current record precludes summary judgment based on this issue.

Plaintiff has clearly alleged in her case that she suffers from health conditions, she has suffered from them for years, and those conditions substantially limit several major life activities. Specifically, Plaintiff has asserted that she suffers from several disabilities, including but not limited to colitis, anxiety, insomnia, and other cognitive disabilities. Exhibit A at ¶30. Plaintiff further alleges that those disabilities, at times, limit her ability to enjoy several life activities including but not limited to sleeping, concentrating, communicating, and thinking. Exhibit A at 31¶. *Any* of the listed limitations caused by *any* of the listed health conditions could plausibly constitute a disability under the law. In a desperate attempt to avoid liability in this matter, Defendant cites to several cases when trying to support their argument that Plaintiff has not adequately established that she has a disability under the ADA. However, none of these cases are comparable to Plaintiff's case, as the plaintiffs in such cases did not allege that life activities were substantially limited (unlike Plaintiff). Defendant also attempts to discredit Plaintiff's pleading by labeling it as "conclusory." Plaintiff has alleged specific health conditions and specific activities that she is limited in due to such conditions. Therefore, Defendant's argument that Plaintiff's complaint is "conclusory" completely lacks merit.

32

**2.  *Plaintiff's "regarded as disabled" and "recorded as disabled" claims are sufficiently alleged in this early pre-discovery stage of litigation.***

"A person is 'regarded as' having a disability" if the person:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 188 (3d Cir.1999)(quoting 29 C.F.R. § 1630.2(1)). "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Medical Center,* 142 F.3d 138, 144 (3d Cir.1998). Similarly, an individual has a record of a disability if that individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Id.* at (k)(1).

Plaintiff has clearly alleged facts that make it plausible that she was regarded as disabled or that she had a record of a disability. Defendant cites *Kelly v. Drexel Univ.* for the proposition that an employer's knowledge of health conditions is insufficient to prove that the employee was regarded as disabled. *See* Defendant's Motion at 24 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). Such reliance is completely inappropriate. The court in *Kelly* dismissed a case on summary judgment because the only evidence that the plaintiff was regarded as being disabled was that he had a visible limp. *Id.*

Defendant's request for relief in the instant case, wherein no discovery has even been exchanged yet, is entirely inappropriate. Defendant asks this Court to dismiss Plaintiff's claims

33

because she has not alleged any facts suggesting that she was regarded as disabled or that she had a record of a disability. Plaintiff has clearly alleged that she has medical conditions that limit her major life activities. Exhibit A at 30-31¶. Additionally, Plaintiff clearly alleges that she told Defendant's management of her health conditions. Exhibit A at 32¶. It is certainly plausible that members of Defendant's management regarded Plaintiff as disabled and/or had a record of her disability. Any evidence of how Defendant's management perceived Plaintiff's disabilities (other than the manner in which they treated her after she informed them of her health conditions) would not be the subject of Plaintiff's personal knowledge. To dismiss these claims before Plaintiff is permitted discovery on them would be premature and patently unfair.

### 3. Plaintiff has alleged that her employment was terminated due to her disability.

The prima facie case [for an ADA claim] requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ." *Teamsters v. United States,* 431 U.S. 324, 358, (1977).

> To establish a prima facie case of discrimination under the ADA, a plaintiff must therefore show (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination.

*Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 761 (3d Cir. 2004).

In this case, Plaintiff's Complaint sets forth more than sufficient factual assertions which give rise to a plausible inference of disability discrimination. She can easily establish the prima facie elements of her claim. She has adequately alleged qualifying disabilities pursuant to the ADA.[17] She was qualified for the position, as she had held it for 10 years. Exhibit A at ¶11. She

---

[17] *See* Section I(1), *supra.*

was fired and was replaced by a non-disabled employee, which gives rise to an inference of discrimination. Exhibit A at ¶28. Plaintiff also had experienced hostility over the last several years of her employment leading up to her termination that she reasonably believes was based on her disabilities.[18]

The first two elements of Plaintiff's prima facie case are not disputed at this stage of the ligation. Defendant's motion only attacks the third element of the *prima facie* case: that the circumstances of Plaintiff's termination give rise to an inference of disability discrimination. Plaintiff's allegation that she was replaced by a non-disabled nurse is sufficient to support a *prima facie* case of disability discrimination. Similarly, Plaintiff's allegations that make up her hostile work environment claim would support an inference of discrimination even if Plaintiff had not been replaced by a non-disabled employee (which she clearly was). Either of theories provide adequate support for Plaintiff's claim.

Plaintiff has adequately pleaded that a non-disabled replacement was hired approximately one week before her termination. Defendant's motion argues that this allegation should not be credited because it is a "formulaic allegation." Defendant's Motion at 13. This contention is entirely false. First, Defendant admits that pleading on information and belief is permissibly under *Twombly/Iqbal. Id.* Second, the cases that Defendant cite, to further support their argument, are cases in which the Court dismissed claims because they lacked "factual content" and merely were a "formulaic recitation of the elements of a cause of action." Plaintiff could discuss and distinguish each of these cases individually, but it seems simpler and more convenient to point to the clear factual content in this allegation.

-----

[18] Plaintiff herein incorporates by reference Section (III)(K), *infra*, which sets forth at length the harassment that she was subjected to because of her disability.

First, it is important to note that hiring a non-disabled replacement is not an element of a disability discrimination claim, it is a fact which may support an inference that discriminatory animus was the true reason for the adverse employment action (termination). Additionally, Plaintiff has alleged the timeframe in which the replacement was hired (approximately one week before her termination). Plaintiff has pleaded "upon information and belief" because Defendant is in the best position to determine the exact name, medical status, and hire date of the individual. Plaintiff believes that her replacement had no disability, but is unfamiliar with her medical history. Plaintiff's allegation is unequivocally factual, not conclusory. When accepted as true, as this *factual* allegation must be, Plaintiff has clearly satisfied the pleading requirements of her age discrimination claims.

Although Plaintiff has already pointed to sufficient evidence to support her claim based on a seemingly non-disabled replacement being hired, Plaintiff has also alleged sufficient facts to show that the harassment that she experienced over the last several years of employment give rise to an inference that her termination was based on her age. Defendant argues that these acts are precluded by the applicable limitations period and are therefore irrelevant. Even assuming, *arguendo*, that Plaintiff's hostile work environment claim under the ADA was time barred, the actions in which form the basis of such claim would still be evidence of discrimination that gives rise to an inference of disability discrimination. *See McCann v. Astrue*, 293 F. App'x 848, 850 & n.3 (3d Cir. 2008) (stating that untimely discrete discriminatory acts "may not be aggregated under a continuing violation theory," but "[t]hey may, however, be used as background evidence to support timely claims").

Based on the foregoing, Defendant's Motion regarding Plaintiff's claim of disability discrimination must be denied.

**J. Plaintiff has sufficiently pleaded enough facts to establish that her employment with Defendant was terminated in retaliation for her complaints of disability discrimination.**

Plaintiff has clearly pleaded sufficient factual matter to sustain a plausible claim of retaliation under the ADA.

> "In order for her to establish a prima facie case of retaliation under the ADA, [Plaintiff] must show: (1) that she engaged in protected employee activity; (2) there was an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) that there was a causal connection between the employee's protected activity and the employer's adverse action."

*Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 123 (3d Cir. 2013) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)) (internal quotations omitted). Plaintiff has clearly alleged enough facts to support all three of these elements.

A causal connection can be demonstrated through direct evidence or circumstantial evidence. *See Trujillo-Cummings v. Public Serv. Co.*, 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir.1992). Some plaintiffs establish causation with (1) temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) by showing that the reason for his or her alleged adverse action is pretextual.

First, Plaintiff has affirmatively alleged that she was terminated in January of 2013. Exhibit A at ¶27. Thus Plaintiff has established that she suffered and adverse employment action.

Second, Plaintiff has also asserted that she complained numerous times about the discriminatory treatment that she was being subjected to because of her disability. Exhibit A at ¶20, 48. Plaintiff also asserts that such complaints were made up until the point of her termination. Exhibit A at ¶48. Thus, Plaintiff has established that she engaged in protected activity.

Third, Plaintiff has pleaded sufficient facts to establish that there is a causal link between her protected activity and her termination. In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity.[19] *See Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005) (reversing district court grant of summary judgment because court failed to consider inference created by adverse action within less than three months following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc.*, WL 703395 (W.D. Pa. 2009)(less than 3 months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir.2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987)(holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Richard v. Cingular Wireless LLC*, 233 Fed.Appx. 334, 338 (5th Cir.2007) (concluding that two and one half months is a short enough time period to support an inference of a causal link); *King v. Rumsfeld, 328 F.3d 145* (4th Cir. 2003)(2.5 months held to establish a *prima facie* case of retaliation).

---

[19] *See Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive."). *See also Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) (A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."). *See also Nesselrotte v. Allegheny Energy, Inc.*, WL 703395 (W.D. Pa. 2009) (less than three months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment).

Plaintiff has clearly alleged that after her complaints of discrimination, she was subjected to discriminatory comments about her complaint of disability discrimination, denied raises, and had her duties taken away. Additionally, Plaintiff further asserts that she complained of discrimination up until the point of her termination (thus establishing close temporal proximity between her last complaint of discrimination and her termination. Exhibit A at ¶20-21, 29. Moreover, Plaintiff alleges that the hostility she was subjected to continued consistently over the last several years of her employment. Exhibit A at ¶29.

Because of the aforementioned reasons, Plaintiff has sufficiently pleaded enough facts to support a claim for retaliation under the ADA.

### K. Plaintiff has pleaded sufficient facts to state a claim for a disability-based hostile work environment.

Plaintiff has pleaded sufficient factual matter to state a claim for a hostile work environment based on her disability under the ADA.

> To establish a hostile work environment claim based on the ADA, [a plaintiff] must show that: "(1) [she] is a qualified individual with a disability under the ADA; (2) [she] was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive working environment; and (5) [her employer] knew or should have known of the harassment and failed to take prompt effective remedial action."

*Hamera v. Cnty. of Berks*, 248 F. App'x 422, 425 (3d Cir. 2007) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667(3d Cir. 1999)).[20]

Plaintiff has alleged sufficient evidence to allow this Court to infer that she was subjected to a hostile work environment during her employment with Defendants in violation of the ADA.

---

[20] Plaintiff herein incorporates by reference the legal standards of the Third Circuit with respect to hostile work environment claims detailed in Section III(F)(3), *supra*.

Plaintiff has alleged sufficient evidence to allow this Court to infer that she was subjected to a hostile work environment (because of her disabilities and/or complaints of disability discrimination) during her employment with Defendants.

First, Plaintiff has asserted enough factual allegations in her Complaint to allow this court to infer (and therefore, believe as true) that she suffered intentional discrimination because of her membership in a protected class (disability). For example, Plaintiff has alleged that (1) she was employed by Defendant for approximately 10 years;[21] (2)she received favorable performance reviews throughout the beginning and middle of her employment with Defendant[22]; (3) she was harassed, belittled and ostracized by Defendant's management (Ms. Snyder and Ms. Roman) because of her disability;[23] (4) she was intimidated with violence by a younger nurse;[24] (5) she clearly relayed concerns of disability discrimination and disparate treatment to Defendant's management;[25] (6) because her concerns of discrimination were not being properly addressed, Plaintiff complained to Defendant's Human Resources Department about the discriminatory and disparate treatment that she was being subjected to because of her disability;[26] (7) despite her repeated complaints to Defendant's management and Human Resources office, Plaintiff continued to be singled out and harassed by Defendant's management because of her disability and complaints of discrimination (until the date of her termination), including but not limited to being passed up for raises, given abysmal evaluations, being subjected to retaliatory comments about her complaints of discrimination, and having her duties stripped from her and given to a

---

[21] Exhibit A at ¶11.
[22] Exhibit A at ¶12.
[23] Exhibit A at ¶¶ 20, 22-23, 25, 29
[24] Exhibit A at ¶¶15-17.
[25] Exhibit A at ¶18.
[26] Exhibit A at ¶ 19.

non-disabled employee.[27] Thus, based on the foregoing, Plaintiff has more than adequately established that the disability-related discriminatory treatment she was being subjected to was both severe and pervasive.

Second, Plaintiff has established enough evidence to show that the main discriminators were her managers, and therefore were agents of Defendant. Thus, Defendant is vicariously liable Plaintiff's management's discriminatory actions.

Moreover, Plaintiff asserted that she complained to management about the discrimination occurring in the workplace, that she wanted the same to cease, and that she expressed such concerns up to the time of her termination. Exhibit A at ¶29. She then asserts that she was terminated in close proximity to her complaints of discrimination. Exhibit A at ¶41. Therefore, viewing these facts as true, Plaintiff's factual assertions give rise to a plausible inference that she was detrimentally affected by said discrimination/hostile work environment.

Overall, Plaintiff was an employee who had received favorable performance reviews for many years before she informed Defendant's management of her health conditions. Soon after Plaintiff informed Defendant's management of her disabilities, she started to be selectively disciplined, given false performance evaluations, and had her job duties assigned to employees who were (upon information and belief) not disabled. Thus, because the aforementioned factual allegations clearly expressed in Plaintiff's Complaint are sufficient to give rise to an inference that Plaintiff was subjected to a hostile work environment because of her disabilities, Defendant's Motion to Dismiss this claim must be denied.

---

[27] Exhibit A at ¶¶ 20, 22-23, 25, 29.

41

**L. Plaintiff's Complaint does not request compensatory, punitive, or emotional distress damages with respect to her ADA retaliation claim.**

Plaintiff does not aim to recover punitive or emotional distress under her ADA retaliation claim. Plaintiff's complaint clearly only seeks damages "as permitted by applicable law." Exhibit A, Wherefore clause at pp 7-8. Plaintiff seeks to recover punitive and/or emotional distress damages with respect to other claims, such as her disability discrimination claim under the ADA. *See* 42 U.S.C. § 12117. Plaintiff's damages are correctly pled, and there is no need to strike anything from the damages portion of the Complaint.

**M. Plaintiff's Complaint does not request punitive damages under the PHRA.**

Plaintiff does not aim to recover punitive damages under the PHRA. Plaintiff's complaint clearly only seeks damages "as permitted by applicable law." Exhibit A, Wherefore clause at pp 7-8. Plaintiff's damages are correctly pled, and there is no need to strike anything from the damages portion of the Complaint.

**N. If this Court finds that Plaintiff has not sufficiently pleaded enough facts for any or all of her claims, Plaintiff requests the right to amend her complaint.**

When a 12(b)(6) motion is granted, a district court should not dismiss the civil action but instead provide the claimant at least one opportunity to amend the defective complaint. However, when further amendment would be futile, an action or claim may be dismissed with prejudice and that plaintiff is barred from raising it again. *Heller v. Fulare,* 371 F.Supp.2d 743, 746 (W.D.Pa.2005) (*citing* Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed.2004)).

If this Court were to find that Plaintiff has failed to plead sufficient factual allegations needed to survive Defendants' 12(b)(6) Motion on any or all of her claims, Plaintiff should be given at least one opportunity to amend her complaint. Additionally, Plaintiff's claims should not be dismissed with prejudice because amending her complaint would not be futile.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied in its entirety.


Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**


<u>*/s/ Richard J. Albanese, Esq.*</u>
Richard J. Albanese, Esq.
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
215.639.0801
Attorney for Plaintiff

Date: March 25, 2014

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DENISE RILEY | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | Case No. 13-7205 |
| | : | |
| v. | : | |
| | : | |
| ST. MARY MEDICAL CENTER | : | |
| | : | |
| Defendant. | : | |
| | : | |

### CERTIFICATE OF SERVICE

I certify on the date set forth below that I sent Plaintiff's Response to Defendant's Motion

to Dismiss to the following address via ECF:

> Andrea M. Kirshenbaum, Esquire
> Mehreen Zaman, Esquire
> Four Penn Center
> 1600 John F. Kennedy Blvd.
> Philadelphia, PA 19103

> */s/ Richard J. Albanese*
> Richard J. Albanese, Esq.

Dated: March 25, 2014

44