**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENISE RILEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 13-cv-7205 |
| | : | |
| ST MARY MEDICAL CENTER and | : | |
| SUSAN SNYDER, | : | |
| Defendants. | : | |

**MEMORANDUM**

**JOYNER, J.**                              **APRIL      23, 2014**

Before the Court are Defendants' Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim (Doc. No. 10), Plaintiff's Response in Opposition thereto (Doc. No. 12), and Defendants' Reply in further support thereof (Doc. No. 13). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

**II.  BACKGROUND**

Plaintiff Denise Riley brings the present action against her former employer, St. Mary Medical Center ("SMMC"), and one of its managers, Susan Snyder. In her First Amended Complaint ("Complaint")(Doc. No. 8) she alleges violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA").

Plaintiff was employed by SMMC for over ten years as a registered nurse. (Complaint at ¶ 11). She rarely received

1

negative performance reviews during this time period. Id. ¶ 12. In 2009, Defendant Susan Snyder became Plaintiff's supervisor. Id. ¶ 13.

Plaintiff is 62 years old, id. ¶ 6, and has a history of colitis, anxiety, insomnia, and other cognitive disabilities. Id. ¶ 30. These disabilities have, at times, limited Plaintiff's abilities to sleep, concentrate, communicate, and think, among other things. Id. ¶ 33.

Beginning in 2009, Plaintiff experienced discipline, harassment, and mistreatment at the hands of Defendant Snyder and another nurse, Nina Mailey. Id. ¶ 14-6. Mailey made comments to Plaintiff that she "couldn't keep up," that she "was too slow," and "was not smart enough to work with patients or staff." Id. ¶ 16. Mailey also "nearly hit Plaintiff with a chair" and was not disciplined for doing so. Id. ¶ 17.

On or about November 9, 2009, "among other occasions," Plaintiff discussed her disabilities with the Defendants. Id. ¶ 31. On or about November 10, Plaintiff made Defendant Snyder aware of Mailey's comments. Id. ¶ 18. Snyder admonished Plaintiff, not Mailey, for the incidents. Id. ¶ 19. On March 27, 2010, Plaintiff informed SMMC of the situation between Plaintiff, Mailey, and Snyder. Id. ¶ 20. That same year, Plaintiff's temporary manager Jim Gentile told Plaintiff that she was a "rat" for making a human resources complaint, and told her to "play

nice in the sandbox." <u>Id</u>. ¶ 21.

In June 2011, Plaintiff received a very poor annual evaluation from her newest manager Joyce Roman. <u>Id</u>. ¶ 22. The evaluation consisted largely of inaccurate information. <u>Id</u>. ¶ 23. That same month, "Plaintiff complained that she believed the selective discipline and overall mistreatment was a result of age discrimination." <u>Id</u>. ¶ 24. In August 2011, Plaintiff was one of the few employees, or only employee, not to receive a raise. <u>Id</u>. ¶ 25. In late 2011, Plaintiff was gradually scheduled for fewer shifts as the Charge Nurse. <u>Id</u>. ¶ 26. Instead, the position was assigned more frequently to a 26-year-old employee. <u>Id</u>. One week before Plaintiff was terminated from her position at SMMC, SMMC hired a younger, non-disabled nurse who was placed into Plaintiff's position. <u>Id</u>. ¶ 28. On January 3, 2013, Plaintiff was terminated from her position at SMMC. <u>Id</u>. ¶ 27. Plaintiff was told that she was terminated for her poor performance. <u>Id</u>. ¶ 29. Plaintiff "had expressed concerns of discriminatory treatment leading up to her termination." <u>Id</u>. ¶ 29.

On or about February 15, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and requested that it be dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). (Def. Ex. A). On April 29, 2013, Plaintiff filed a complaint in this Court.

## III. STANDARD OF REVIEW

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do... [n]or does a claim suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 557, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)).

Indeed, "[t]he touchstone of the pleading standard is plausibility." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231 n. 14 (3d Cir. 2013)(quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262, n. 27 (3d Cir. 2010)). A court determining the sufficiency of a complaint should take note of the elements a plaintiff must plead to state a claim, identify the conclusions that are not entitled to the assumption of truth, and "where there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Steel Valley School District, 706 F.3d 209, 212 (3d Cir. 2013)(quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011)).

## IV. **ANALYSIS**

The Court analyzes Plaintiff's claims of unlawful discrimination, retaliation, and hostile work environment under the ADA, ADEA, and PHRA. The Court addresses below the timeliness of Plaintiff's claims, followed by the sufficiency of Plaintiff's allegations.

## A. **Timeliness**

Defendants contend that Plaintiff's claims are untimely because she failed to exhaust her administrative remedies prior to commencing a lawsuit in federal court.

### 1. Age Discrimination, Disability Discrimination, and Retaliation under the ADA and ADEA

The enforcement section of the ADA, 42 U.S.C. § 2117, adopts the procedures for claims set forth in Title VII of the Civil Rights Act of 1964 ("Title VII"). Accordingly, 42 U.S.C. § 2000e-5 sets forth the administrative remedies that must be pursued prior to filing an ADA lawsuit in federal court. See 42 U.S.C. §2000e-5. For Plaintiff's claims to be timely, she must have filed a Charge of Discrimination within 300 days of when the

alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); Kim v. I.R.S., 522 Fed. Appx. 157, 158 (3d Cir. 2013)(citing Mandel v. M&Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013)).

Under ADEA, too, a Plaintiff must submit her administrative discrimination charge within 300 days of the allegedly unlawful employment action. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000)(citing 42 U.S.C. § 2000e-5(e)(1)).

Pinpointing the dates of the allegedly unlawful employment practices is crucial, because Title VII measures the timeliness of an administrative charge from the date "the alleged unlawful employment practice occurred." Id. at 855 (citing Delaware State College v. Ricks, 449 U.S. 250, 256 (1980)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Mandel, 706 F.3d at 165 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). Termination of employment, failure to promote, and refusal to hire all constitute discrete acts. Id.

Plaintiff filed her Charge of Discrimination with the EEOC on February 15, 2013. (Def. Ex. A).[1] Thus, any ADA or ADEA claims

---

[1] The Court may consider the EEOC Charge of Discrimination without converting Defendants' Motion into one for summary judgment. See, e.g., Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Mulholland v. Classic Mgmt. Inc., Civ. A. No. 09-2525, 2010 WL 2470834 at *4 n.6 (E.D. Pa. 2010).

that were based on discrete acts occurring more than 300 days prior, or before April 21, 2012, are time-barred. Applying this rule, Plaintiff's claims for age discrimination, disability discrimination, and retaliation under the ADEA and ADA may proceed based on Plaintiff's January 3, 2013 termination alone. Claims based on any other discrete acts are untimely.

2.    Age Discrimination, Disability Discrimination, and
      Retaliation under the PHRA

For a complaint to be timely under the PHRA it must be filed within 180 days of the alleged act of discrimination. 43 Pa. Stat. Ann. § 959 (West); Mandel, 706 F.3d at 164. As with her ADA and ADEA claims, Plaintiff may proceed under the PHRA only with regard to claims based on the discrete act of her termination from employment.

3.    Hostile Work Environment under the ADEA, ADA, and PHRA

A hostile work environment is a series of separate acts that, when viewed in the collective, constitute one unlawful employment practice. Mandel, 706 F.3d at 165. Under a continuing violation theory, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" Id. (citing O'Connor v. City of

Newark, 440 F.3d 125, 127 (3d Cir. 2006)). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." Id. at 165-66. To distinguish between isolated acts and continuing violations, courts may look to the non-exclusive factors of subject matter and frequency of the underlying acts. Id. at 166.

The Court finds that Plaintiff's hostile work environment claims are time-barred. In order to be timely at least one act upon which Plaintiff's hostile work environment claim is based must have occurred on or after April 21, 2012 (for her ADA and ADEA claims) or August 19, 2012 (for her PHRA claims). Plaintiff's complaint contains allegations of acts that continued throughout periods of her employment at St. Mary's, as well as acts that occurred only on specific occasions. For example, Plaintiff alleges that "Defendant Snyder selectively disciplined Plaintiff and harassed her throughout their work relationship," (Complaint ¶ 14); "Nina Mailey would regularly mistreat Plaintiff," id. ¶ 15, and "made discriminatory comments to Plaintiff." Id. ¶ 16. The parties agree that none of these acts fall within the limitations period.

In addition, Plaintiff alleges that she was terminated in January 2013, which is an act within the relevant period.

8

Defendants argue that Plaintiff cannot rely on her termination in the pattern of actions constituting an ongoing violation, because Plaintiff's termination is a discrete act that is actionable on its own. (Def. Mot. to Dismiss at 10). The Court agrees.

Pennsylvania district courts have reached differing conclusions as to whether the termination of an individual from employment may be part and parcel of her hostile work environment claim. Compare Nott v. Reading Hosp. & Med. Ctr., CIV. A. 11-2265, 2012 WL 848245 at *9 (E.D. Pa. Mar. 14, 2012); Cubbage v. Blooomberg, L.P., CIV.A.05-2989, 2008 WL 1836668 at *3, *5 (E.D. Pa. 2008)("as a matter of law [a plaintiff's] termination can constitute a component part of her hostile work environment claims . . . .[o]ne can posit situations where the act of terminating an employee and the alleged hostile work environment are inextricably linked"), with Santee v. Lehigh Valley Health Network, Inc., Civ. A. 13-3774, 2013 WL 6697865 at *7 (E.D. Pa. Dec. 19, 2013)("[p]laintiff's termination . . . is a discrete act and is not a component of a hostile work environment claim."); Fusco v. Bucky County, 2009 U.S. Dist. LEXIS 118924 at *20-21 (E.D. Pa. Dec. 21, 2009)("[t]he continuing violation theory is not applicable to the two discrete acts of discrimination that Defendants challenge because such acts are properly considered separate, actionable unlawful practices."); Rotteveel v. Lockheed Martin Corp., 2003 U.S. Dist. LEXIS 12329 at *15 (E.D. Pa. July

15, 2003)("[t]he actions upon which plaintiff's claims are based, i.e., demotion, failure to promote, etc. . . . constitute discrete discriminatory acts to which the continuing violation theory is inapplicable.")

The Third Circuit's opinion in O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006) is instructive here. In explaining the Supreme Court's decision in Morgan, the Third Circuit differentiated between the distinct, non-overlapping categories of "discrete acts" and acts that may constitute a continuing violation. Judge Fisher wrote:

> Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit . . . The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.

O'Connor, 440 F.3d at 127. The Third Circuit concluded that the "individually actionable allegations" of termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation "cannot be aggregated" in a hostile work environment claim. Id. Applying this reasoning to the instant case, Plaintiff's January 2013 termination undoubtedly falls into the category of a "discrete act" which, under the Third Circuit's

10

reading of <u>Morgan</u>,[2] may not be used in aggregate with other acts to constitute a hostile work environment claim. Because Plaintiff alleges no other acts that fall within the limitations period, Plaintiff's hostile work environment claims under the ADEA, ADA, and PHRA must be dismissed as untimely.

**B.   Age-Based Discrimination and Retaliation**

   <u>1.</u>  <u>Discrimination</u>

   The ADEA prohibits employers from discriminating against individuals in the hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. 29 U.S.C. § 621. To state a claim for age discrimination under the ADEA and PHRA,[3] a plaintiff must show that age was a but-for cause of the adverse employment action that she experienced, "that age had a determinative influence on the outcome." <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 176-77 (2009); <u>see also</u> <u>Smith v. City of Allentown</u>, 589 F.3d 684, 690-91 (3d Cir. 2009). Accordingly, a plaintiff must allege that (1) she is over forty, (2) she is qualified for the position in

---

   [2] The Third Circuit found it "worthy of note that while the <u>Morgan</u> Court split 5-4 on other issues, it was unanimous on this point. . . there is not a single vote on the Court for the proposition that individually actionable discrete acts may support suit outside the limitations period if they are aggregated and labeled as a hostile environment claim." <u>O'Connor</u>, 440 F.3d at 129 n.6.

   [3] The ADEA and PHRA legal standards are coextensive. <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 466 n.1 (3d Cir. 2005)(citing <u>Glanzman v. Metropolitan Management Corp.</u>, 391 F.3d 506, 509 n.2 (2004)("The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively.")

question, (3) she suffered from an adverse employment decision, and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. Smith, 589 F.3d at 689. Plaintiff's complaint contains the following factual allegations: (1) she is 62 years old and thus was older than 40 at the time of her discharge, (2) she served for 10 years in the position in question with very few negative performance reviews, (3) she was terminated from this position, and (4) Plaintiff was gradually scheduled as the Charge Nurse more infrequently while the position was filled by a 26-year old replacement. Plaintiff's eventual replacement, who was hired about a week prior to Plaintiff's termination, was "significantly younger" than Plaintiff. The Court finds the age difference between Plaintiff and the Charge Nurse who was scheduled instead of Plaintiff, as well as Plaintiff's eventual replacement by a younger employee, to be sufficient to permit a reasonable inference that age discrimination occurred. The facts presented by Plaintiff, which the Court accepts as true for the purposes of this motion, are sufficient to show that Plaintiff has a "plausible claim for relief" under Twombly.

     2.   Retaliation

     A claim for retaliation under the ADEA must show that Plaintiff (1) engaged in protected activity, (2) was subject to adverse action either subsequent to or contemporaneous with the

protected activity and (3) there was a causal connection[4] between the protected activity and the adverse action. Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). Here, Defendants assume that Plaintiff engaged in protected activity and that her termination from employment constituted an adverse employment action. However, Defendants argue that Plaintiff has not alleged causation.

The element of causation is highly context-specific because it involves inquiry into the motives of an employer. Fasold, 409 F.3d at 189 (quoting Kachmar v. SunGuard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997)). "[W]hen only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn." Id. at 190 (finding 3 months to provide inference of

---

[4] Defendant urges the Court to apply the heightened "but-for" causation standard recently articulated for Title VII retaliation claims by the Supreme Court in University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517 (2013), because the ADEA and ADA's anti-retaliation provisions contain statutory language similar to Title VII's anti-retaliation provision. The Third Circuit has not yet addressed whether the "but-for" causation test now applicable to Title VII claims also applies to retaliation claims under the ADEA and ADA. The Court declines to decide this issue at this time because it finds Plaintiff's allegations sufficient under either test.

Additionally, the Court notes the Supreme Court's warnings that "the textual differences between Title VII and the ADEA prevented" importing a specific causation standard from one statute to the other in status-based discrimination claims. Nassar, 133 S.Ct. at 2527 (internal quotation omitted). Additionally, the Supreme Court's detailed analysis of the "interplay among the status-based discrimination provision . . . the antiretaliation provision . . . and the motivating-factor provision", id. at 2533, of Title VII may caution against a wholesale application of the Nassar analysis to other statutes at this juncture.

retaliation). When the evidence of temporal proximity stands alone, it must be "'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Baker v. United Defense Industries, Inc.</u>, 403 Fed. Appx. 751, 758 (3d Cir. 2010)(non-precedential)(quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997)). However, a causal link can be proven not only through temporal proximity, but also through various types of fact-specific circumstantial evidence. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280-81 (3d Cir. 2000)(evidence of antagonism, retaliatory animus, inconsistent reasons given for termination, and temporal proximity may all be probative of a causal link).

Plaintiff has provided the following facts to support an inference of a causal connection: Plaintiff was admonished by Snyder after complaining in 2009 about Mailey's comments (Complaint ¶ 19); Plaintiff's temporary manager Jim Gentiles told her she was a "rat" for making her second complaint in 2010 and that she needed to "play nice in the sandbox," <u>id</u>. ¶ 21; she did not receive a raise and was scheduled for fewer shifts after making her third complaint in 2011, <u>id</u>. ¶ 24-26; and that Plaintiff "had expressed concerns of discriminatory treatment leading up to her termination." <u>Id</u>. ¶ 29. These facts are sufficient at this juncture to raise a reasonable inference that plaintiff's termination came about as a result of her complaints.

Though the Court does not give weight to the legal conclusion
that the treatment was "discriminatory," Plaintiff's allegations,
taken as true, establish that she notified Defendant in some form
of her grievances on multiple occasions, including during the
time period immediately preceding her termination, that she
conveyed to Defendant that she believed she was the subject of
discrimination, and that she experienced antagonism and adverse
actions within relatively short time periods thereafter. See
Farrell, 206 F.3d at 280 ("the proffered evidence, looked at as a
whole, may suffice to raise the inference.") This is enough
factual matter to suggest the required element of causation at
this stage.

Thus, Plaintiff's claims for discrimination and retaliation
under the ADEA and PHRA may proceed.[5]

## C.   Disability-Based Discrimination and Retaliation

### 1.   Discrimination

The ADA was enacted to prevent qualified individuals from
being discriminated against in employment based on their
disabilities. Gaul v. Lucent Technologies, Inc., 134 F.3d 576,
579 (3d Cir. 1998). A plaintiff makes out a prima facie case of
discrimination under the ADA when she establishes that she

---

[5] Defendants argue that Plaintiff cannot recover punitive or emotional
distress / compensatory damages under the ADEA. (Def. Mot. at 19). Plaintiff
responds that she is not seeking such damages under the ADEA. (Pl Resp. at
27). Thus, the parties are in agreement that no claim for punitive or
emotional distress damages under the ADEA will proceed.

(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).

Defendants contend that Plaintiff has not alleged that she has a disability under the ADA. The ADA defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The statute further defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing . . . learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2). To determine whether a plaintiff is "substantially limited," courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. Cohen v. CHLN, Inc., Civ. A. 10-00514, 2011 WL 2713737 at *6 (E.D. Pa. July 13, 2011). After the passage of the ADA Amendments Act of 2008, the definition of disability is not meant to be a demanding standard; rather, "the determination of whether an impairment substantially limits a major life activity requires an

16

individualized assessment." Id. at *7 (citing 29 C.F.R.
§ 1630.2(i)(2); § 1630.2(j)(1)(i)).

The Court finds that Plaintiff's complaint does not contain
the factual matter required to plead the existence of a
disability. Plaintiff has alleged that she had a "history of
suffering from colitis, anxiety, insomnia, and other cognitive
disabilities." (Complaint ¶ 30). Plaintiff further alleges that
her conditions "have, at times, limited her ability to enjoy . .
. sleeping, concentrating, communicating, and thinking (and this
is not an exhaustive list)." Id. ¶ 33. The Third Circuit has held
that activities such as thinking, concentrating, and remembering
constitute major life activities under the statute. Gagliardo v.
Connaught Laboratories, Inc., 311 F.3d 565, 569 (3d Cir. 2002).

However, Plaintiff has provided no factual basis for
concluding that her abilities to sleep, concentrate, communicate,
or think are "substantially limited," as required under the
statute. Crucially, she has provided no facts illuminating to
what extent or how her activities are "limited." This dearth of
detail makes it impossible to infer that Plaintiff is
substantially limited, as opposed to only somewhat limited or
mildly hampered, in enjoying the major life activities she
enumerates, and precludes the Court from conducting the
"individualized assessment" required to determine whether a
substantial limitation exists. Plaintiff has not adequately pled

that she has "a mental impairment that substantially limits one or more major life activities."

Nor has Plaintiff pled that she was "regarded" as having a disability. An individual is regarded as having an impairment if she establishes that "she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A plaintiff must "demonstrate that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity or that the employer believed an employee's actual impairment to limit major life activities when it in fact did not." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012).

Nothing in Plaintiff's Complaint suggests either that SMMC believed that she had a substantially limiting impairment when she in fact did not, nor that SMMC believed her impairments to be substantially limiting when they were not. Moreover, even though Plaintiff alleges that she told Defendant about her conditions, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled." Kiniropoulos v. Northampton County Child Welfare Service, 917 F.Supp.2d 377, 386 (E.D. Pa. 2013)(quoting Kelly v. Drexel University, 94 F.3d 102, 109 (3d

Cir. 1996)). Plaintiff has not alleged that she was regarded as having a disability.

Lastly, Plaintiff's Complaint fails to allege that she has a record of disability. ADA regulations provide that "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1); see also Eshelman v. Agere Systems, Inc., 554 F.3d 426, 437 (3d Cir. 2009)(quoting Sorensen v. Univ. of Utah Hosp., 194 F.3d 1084, 1087 (10th Cir. 1999)). The plaintiff must also show that the employer "relied upon [her] record of impairment in making its employment decision." Eshelman, 554 F.3d at 437. Plaintiff's failure to allege that her mental impairments substantially limit her life activities mean that she also fails to plead a record of disability. As explained above, Plaintiff has alleged a limitation on certain activities, but provided no factual support permitting an inference that the limitation was substantial.

Plaintiff argues that "it is certainly plausible that members of Defendant's management regarded Plaintiff as disabled and/or had a record of disability. Any evidence . . . would not be the subject of Plaintiff's personal knowledge," and thus she should be allowed to pursue discovery on these claims. However, the pleading standard "asks for more than a sheer possibility

19

that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.
Plaintiff's plea that discovery may unearth evidence to prove her
claim does not discharge her responsibility to "nudge [her]
claims . . across the line from conceivable to plausible." Id. at
680 (internal quotation omitted).

Plaintiff's PHRA claim for discrimination based on her
disability also fails, because the ADA and PHRA are "to be
interpreted consistently, and [] have the same standard for
determination of liability." Macfarlan v. Ivy Hill SNF, LLC, 675
F.3d 266, 274 (3d Cir. 2012).

2.   Retaliation

A plaintiff alleging disability retaliation under the ADA
and PHRA must plead (1) protected conduct by the plaintiff,
(2) an adverse action by the employer either after or
contemporaneous with the employee's protected activity, and (3) a
causal connection between the protected conduct and adverse
action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d
Cir. 1997). Plaintiff's allegations regarding disability-based
retaliation are exactly the same as those going to age-based
retaliation, with the exception of her June 2011 complaint which
did not mention disability discrimination. However, even without
this June 2011 complaint, the Court finds for the reasons in C(2)
supra that the facts evidence a pattern of antagonism between the
Plaintiff and her employer over a period of years that, when

combined with the complaints made by Plaintiff in the time leading up to her eventual termination, give rise to an inference that she was terminated because of her disability.

Thus, Plaintiff's claim for retaliation under the ADA and PHRA may proceed.[6]

The Court will not allow Plaintiff to amend her Complaint because doing so would be futile. Plaintiff could not cure the fact that her hostile work environment claims are untimely as a matter of law. Moreover, Defendant made substantially similar arguments regarding Plaintiff's disability discrimination claim in Defendant's first Motion to Dismiss (Doc. No. 7) as it does in its current Motion (Doc. No. 10). This first Motion to Dismiss put Plaintiff on notice of the specific ways in which her complaint may be deficient. While Plaintiff took the opportunity to submit an Amended Complaint (Doc. No. 8), she chose not to alter any of the language alleging that she has a disability under the ADA. Thus, the Court finds that further amendments would be futile.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

---

[6] As with Plaintiff's claims under the ADEA, the parties are in agreement that Plaintiff cannot and is not pursuing compensatory, punitive, or emotional distress damages with respect to her ADA retaliation claim, or punitive damages under the PHRA. See (Def. Mot. at 30-31); (Pl. Response at 42).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DENISE RILEY,                          :
                                       :
                    Plaintiff,         :    CIVIL ACTION
                                       :
        v.                             :    NO. 13-cv-7205
                                       :
ST MARY MEDICAL CENTER and             :
SUSAN SNYDER,                          :
                    Defendants.        :


**<u>ORDER</u>**

AND NOW, this     23rd     day of April, 2014, upon
consideration of Defendants' Motion to Dismiss (Doc. No. 10),
Plaintiff's Response in opposition thereto (Doc. No. 12) and
Defendants' Reply in further support thereof (Doc. No. 13), it is
hereby ORDERED that Defendants' Motion is GRANTED in part and
DENIED in part.

The Motion is GRANTED as to the following claims:

(1) Plaintiff's hostile work environment claims under
the Americans with Disabilities Act ("ADA"), the Age
Discrimination in Employment Act ("ADEA"), and the
Pennsylvania Human Rights Act ("PHRA").

(2) Plaintiff's disability discrimination claims under
the ADA and PHRA.

The Motion is DENIED as to the following claims:

(1) Plaintiff's age-discrimination and retaliation
claims, based on Plaintiff's termination, under the
ADEA and PHRA;

(2) Plaintiff's disability retaliation claim, based on
Plaintiff's termination, under the ADA and PHRA.




                              BY THE COURT:


                              /s/ J. Curtis Joyner
                              _____
                              J. CURTIS JOYNER, J.