```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE RILEY,                         :
                                      :
               Plaintiff,             :   CIVIL ACTION
                                      :
     v.                               :   NO. 13-cv-7205
                                      :
ST MARY MEDICAL CENTER and            :
SUSAN SNYDER,                         :
               Defendants.            :
```

## MEMORANDUM

**JOYNER, J.**                                          **MAY 27, 2014**

Before the Court are Plaintiff's Motion for Reconsideration (Doc. No. 17), and Defendants' Response in Opposition thereto (Doc. No. 19). For the following reasons, Plaintiff's Motion is GRANTED in part.

## II. BACKGROUND

Plaintiff requests the Court to reconsider in part its Order on Defendants' Motion to Dismiss (Doc. No. 15). Plaintiff moves the Court to reconsider the portion of its Order dismissing Plaintiff's disability discrimination claims under the Americans with Disabilities Act ("ADA") as amended, and the Pennsylvania Human Relations Act ("PHRA"). Because the facts of the case are detailed in that Order and well known to the parties, the Court incorporates those facts here.

## III. STANDARD OF REVIEW

"The purpose of a motion for reconsideration is to correct

manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)(internal citation omitted). An order may be altered or amended if the party seeking reconsideration shows at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. <u>Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.</u>, 602 F.3d 237, 251 (3d Cir. 2010).

Although "courts often take a dim view of issues raised for the first time in post-judgment motions," reconsideration is the "appropriate means of bringing to the court's attention manifest errors of fact or law" and courts may not decline to consider issues fundamental to the case. <u>Max's Seafood Café ex rel. Lou Ann-Inc. v. Quinteros</u>, 176 F.3d 669, 678 (3d Cir. 1999)(internal citations omitted).

**IV.   ANALYSIS**

A brief review of the recent history of the ADA is useful in contextualizing the parties' arguments.[1] Congress passed the ADA to eliminate discrimination against individuals with disabilities and to provide enforceable standards to address such

---

[1] The Court intends its brief review of the ADA and its Amendments to supercede any contrary discussion in its April 24, 2014 Memorandum. (Doc. No. 14).

discrimination. See 42 U.S.C. § 12101. Before the Act was amended by Congress in 2008, the U.S. Supreme Court interpreted the definition of a disability under the Act strictly. Cohen v. CHLN, Inc., Civ. A. 10-00514, 2011 WL 2713737 at *6 (E.D. Pa. July 13. 2011)(citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002); Sutton v. United Airlines, Inc., 527 U.S. 471, 499 (1999)). With the ADA Amendments Act of 2008 ("ADAAA"), Congress explicitly sought to reject the Supreme Court's narrow interpretations in Toyota Motor and Sutton. ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553, Sec. 2(b)(2)-(5). Though Congress did not alter the definition of disability, it instructed that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102 (4)(A).

As to the "physical or mental impairment" prong of the definition of a disability, EEOC regulations[2] clarified that "the determination of whether an impairment substantially limits a major life activity requires an individualized assessment" and "should require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the

---

[2] Courts may generally rely on the Regulations issued by the Equal Employment Opportunity Commission to implement the ADA, though the level of deference that these regulations are due is not settled. Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 762 n.7 (3d Cir. 2004).

ADAAA." Cohen, 2011 WL 2713737 at *6 (citing 29 C.F.R. § 1630.2(j)(1)(iv)(Apr. 4, 2012)).

With the Amendments, Congress also further defined the "regarded as" prong of the definition of a disability. ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553, Sec. 3(3); see generally Allison Ara, The ADA Amendments Act of 2008: Do the Amendments Cure the Interpretation Problem of Perceived Disabilities?, 50 Santa Clara L. Rev. 255, 270 (2010). Prior to the 2008 Amendments of the ADA, Third Circuit courts had required that employer-defendants "entertain[] some 'misperception' about Plaintiff: [the employer] must believe that Plaintiff has a substantially limiting impairment that Plaintiff does not have or that Plaintiff has a substantially limiting impairment when, in fact, the impairment is not so limiting." Merit v. Southeastern Pennsylvania Transit Authority, 315 F.Supp.2d 689, 702 (E.D. Pa. 2004); see also Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007). This requirement stemmed from the Supreme Court's reasoning in Sutton v. United Air Lines, Inc., 527 U.S. 471, 487 (1999). Wilson, 475 F. 3d at 179.

Under the current ADAAA, an individual is "regarded as" having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a

4

major life activity." 42 U.S.C. § 12102(3). Thus, the plain language suggests that a Plaintiff need only plead that she was discriminated against because of an impairment (either actual or perceived). Applicable regulations clarify that "prohibited actions [under the Act] include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment." 29 C.F.R. § 1630.2(l)(1) (Apr. 4, 2012).

The Third Circuit has held - albeit in a non-precedential opinion - that the ADA amendments are non-retroactive. <u>Britting v. Secretary, Dept. Of Veterans Affairs</u>, 409 Fed. Appx. 566, 569 (3d Cir. 2011). Thus, recent cases confronting events that occurred prior to January 1, 2009, still apply the old, narrower standard of disability, under both the "physical or mental impairment" prong and the "regarded as" prong. <u>See</u>, <u>e.g.</u>, <u>RJH Medical Center, Inc. v. City of DuBois</u>, – Fed. Appx. –, 2014 WL 1623052 at *4 (3d Cir. Apr. 24, 2014)(non-precedential); <u>Terry v. Town of Morristown</u>, 446 Fed. Appx. 457, 462 (3d Cir. 2011)(non-precedential); <u>see</u> also <u>McCarty v. Marple Tp. Ambulance Corps</u>, 869 F.Supp.2d 638, 648 n.9 (E.D. Pa. 2012); <u>Ramage v. Rescot Systems Group, Inc.</u>, 834 F.Supp.2d 309, 319 n.8 (E.D. Pa. Dec. 6, 2011). Caselaw fleshing out the contours of the new standard, especially for the "regarded as" prong, is in flux. For example,

district courts in Pennsylvania are currently split as to whether an employer's knowledge of an employee's disability, without more, is sufficient to show that an employer "regarded" the employee as having an impairment. Compare Kiniropoulos, 917 F.Supp.2d 377, 386 (E.D. Pa. 2013)("the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled")(quoting Kelley v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)) with Rubano v. Farrell Area School Dist., Civ. A. 11-1574, 2014 WL 66457 at *11, - F.Supp.2d -, (W.D. Pa. Jan. 8, 2014)("all that an ADA plaintiff must show to raise a genuine issue of material fact for the "regarded as" prong is that a supervisor knew of the purported disability)(citing Mengel v. Reading Eagle Co., Civ. A. No. 11-6151, 2013 WL 1285477 at *4 (E.D. Pa. Mar. 29, 2013)).

Because the facts underpinning this case, including the alleged adverse employment action suffered by Plaintiff, occurred after January 1, 2009, post-amendment standards and caselaw apply to the definition of disability in Plaintiff's ADA claim.

Notably, while the ADAAA altered the federal standard for proving a disability, the Pennsylvania legislature has not enacted a similar amendment to the PHRA. Thus, whether a plaintiff has alleged a disability under the PHRA must be analyzed under the law and standards used prior to the 2008

Amendments to the ADA. See <u>Szarawara v. City of Montogomery</u>, 2013 WL 3230691 at *2 (E.D. Pa. June 27, 2013); <u>Deserne v. Madlyn & Leonard Abramson Ctr. For Jewish Life, Inc.</u>, 2012 WL 1758187 at *3 n.3 (E.D. Pa. May 17, 2012). However, the remaining elements for establishing a prima facie case of discrimination remain the same under the ADAAA and PHRA and may be analyzed together. <u>Rubano v. Farrell Area School Dist.</u>, 2014 WL 66457 at *7 n. 7, -F.Supp.2d -, (W.D. Pa. Jan. 8, 2014). These elements did not change as a result of the 2008 Amendments. See, e.g., <u>Howard v. Pennsylvania Dept. of Public Welfare</u>, 2013 WL 102662 at *9 (E.D. Pa. Jan. 9, 2013)(citing <u>Gaul v. Lucent Technologies, Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998)).

Against this background, the Court now turns to address Plaintiff's arguments in her Motion for Reconsideration.

**A.   PHYSICAL OR MENTAL IMPAIRMENT**

Plaintiff argues that she has properly alleged a disability under the Amended ADAAA because "the ADA's definition of a disability is extremely broad, the amount that Plaintiff is limited by her medical conditions is a question of fact inappropriate for a motion to dismiss, and Plaintiff has adequately pled a disability under the law." (Pl. Mot. at 6).

Plaintiff has pled the following facts: "Plaintiff [] had a history of suffering from colitis, anxiety, insomnia, and other cognitive disabilities." (First Amended Complaint ("FAC"), Doc.

No. 8 at ¶ 30). "Plaintiff's disabilities have, at times, limited her ability to enjoy several major life activities including but not limited to sleeping, concentrating, communicating, and thinking (and this is not an exhaustive list.)" Id. ¶ 33. In its Order, the Court held that Plaintiff had provided "no facts illuminating *to what extent* or how her activities are "limited," thus making it impossible for the Court to infer that Plaintiff is substantially limited, as opposed to only mildly limited, in enjoying major life activities. (Order, Doc. No. 14 at 19).

Plaintiff points out, and the Court agrees, that Plaintiff's allegations are sufficient under the ADAAA though they do not specifically detail the nature of her limitations. Although the ADAAA still defines "disability" in relevant part as "a physical or mental impairment that *substantially* limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(emphasis added), a plaintiff's allegation of the existence of a specific limitation, along with the life activities it impacts, is generally sufficient to clear the first hurdle of a motion to dismiss. See, e.g., McFadden v. Biomedical Systems Corp., 2014 WL 80717 at *2 (E.D. Pa. Jan. 9, 2014); Hepner v. Thomas Jefferson University Hospitals, Inc., 2013 WL 2334148 at *6 (E.D. Pa. May 29, 2013). For example, in McFadden, the plaintiff alleged that he suffered from herniated discs in his back, which caused him pain and limited his ability to walk,

stand and sit for extended periods of time. McFadden, 2014 WL 80717 at *1. The Court held that, "[g]iven the ADAAA'a liberalized standards, McFadden's allegation that he has an impairment that is disabling is sufficient to overcome a motion to dismiss." Id. at *3.

Applying this liberalized standard to the present case, the fact that Plaintiff is allegedly limited in sleeping, concentrating, communicating and thinking suggests that she might be substantially limited in those major life activities. Thus, Plaintiff has adequately pled that she has a disability under the ADAAA.

Plaintiff has not, in contrast, pled the existence of a disability under the Pennsylvania Human Relations Act (PHRA), which is to be interpreted under the pre-amendment ADA standard for disability. Plaintiff's conclusory allegations that her "disabilities have, at times, limited her ability to enjoy several major life activities," provide no information on the magnitude of her impairments and to what extent they impair her ability to enjoy sleeping, concentrating, communicating, or thinking. Szarawara v. County of Montgomery, Civ. 12-5714, 2013 WL 3230691 at *6 (E.D. Pa. June 27, 2013)(motion to dismiss granted because plaintiff's allegations did "not permit any reasonably accurate assessment of the magnitude of limitation [plaintiff] faces in any major life activity"); Warshaw v.

9

Concentra Health Services, 719 F.Supp.2d 484, 494-95 (E.D. Pa. 2010). Without more factual detail, Plaintiff's complaint does not raise a reasonable inference that Plaintiff's impairments "prevent[] or severely restrict[] [her] from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., 534 U.S. at 198. Thus, the Court's conclusion that Plaintiff has failed to plead the existence of a disability under the PHRA does not constitute a "manifest error of law" supporting reconsideration.

**B.     REGARDED AS HAVING AN IMPAIRMENT**

Plaintiff also argues that the Court erred in dismissing her alternative argument,[3] that Plaintiff has a disability within the meaning of the ADAAA because she was "regarded as having such an impairment." 42 U.S.C. § 12102(1).

Plaintiff argues that her allegations of St. Mary Medical Center's actions subsequent to being informed of Plaintiff's impairments support an inference that Plaintiff was regarded as having a disability under the ADAAA. Under the current, expansive standard, the Court agrees. Even if an employer's knowledge of an employee's disability is insufficient to find that the employer regarded the employee as impaired, see Kiniropoulos, 917 F.Supp.2d at 386, Plaintiff has alleged more than just knowledge.

---

[3] The Third Circuit has confirmed that a Plaintiff may plead both that she was disabled and that she was regarded as disabled. Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 189 (3d Cir. 1999).

Plaintiff's allegations that she was told she was "too slow" and "was not smart enough," that she informed her employer of her physical and mental impairments and subsequently was admonished, warned not to make human resources complaints, received a poor evaluation, did not receive a raise, and was ultimately terminated, reasonably suggest that her employer regarded Plaintiff as having a disability. (FAC ¶¶ 16, 19, 20-22, 25, 27, 29, 31).

Defendants are correct that the cases cited in support of Plaintiff's argument are different from the facts at hand. Plaintiff has cited cases in which employers took adverse employment actions very shortly after learning of plaintiffs' impairments. See, e.g., Warshaw v. Concentra Health Services, 719 F.Supp.2d 484, 496 (E.D. Pa. 2010)(adverse action taken roughly two weeks after employer was informed); Weaver v. County of McKean, 2012 WL 1564661 at *4 (W.D. Pa. Apr. 9, 2012)(less than a week later); Bullock v. Balis & Co., 2000 WL 1858719 at *5 (E.D. Pa. Dec. 19, 2000)(two weeks); Stewart v. Balley Total Fitness, 2000 WL 1006936 at *5(E.D. Pa. July 20, 2000)(plaintiff demoted, then suspended, immediately after returning to work post-hospitalization). In Plaintiff's case, she discussed her disabilities with Defendants on or about November 9, 2009, yet did not receive a poor annual evaluation until 2011, did not receive a raise in 2011, and was not fired until 2013. (FAC

¶¶ 22, 25, 27, 31). However, Plaintiff has additionally alleged ongoing harassment beginning in 2009, id. ¶¶ 13-15, and at least one reprimand in 2010. Id. ¶ 21. Further, the cases cited by Plaintiff apply the stricter pre-2008 standard. The Court finds that Plaintiff has adequately alleged facts to support an inference, at this early stage of the litigation, that she "has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3).

    Plaintiff has not, however, stated a claim for discrimination under the PHRA because St. Mary Medical Center "regarded" her as disabled. Plaintiff has not alleged a misperception on the part of St. Mary Medical Center as to her impairments. See Sutton, 527 U.S. at 489 ("it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.") In Sutton, the Supreme Court affirmed dismissal of petitioners' claims because petitioners had not alleged that respondents regarded their impairment as *substantially* limiting their abilities. Id. (employers are "free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job")(emphasis in

original). Similarly, Plaintiff has not alleged the type of impairment which St. Mary Medical Center believes her to have, nor facts to suggest that St. Mary Medical Center regards Plaintiff's impairment as substantially limiting. See Merit, 315 F.Supp.2d at 702; Szarawara, 2013 WL 3230691 at *6. The Court will not alter its Order as to Plaintiff's PHRA claim.

**C.    DISCRIMINATION**

Given that Plaintiff has alleged that she had a disability under the ADAAA, the Court will next address her discrimination claim under the Act. Plaintiff has alleged sufficient facts to give rise to an inference of disability discrimination. Plaintiff has pled that she is otherwise qualified to perform the essential functions of the job at issue, as evidenced by her ten-year service in her position at St. Mary Medical Center. See generally Gaul, 134 F.3d at 580. She has also alleged facts to support the conclusion that she was terminated because of her disability. She alleges that she discussed her disabilities with the Defendants, that she was admonished for complaining about the derogatory comments made about her by another employee, received a poor annual evaluation, and was terminated after being scheduled for fewer and fewer shifts as the Charge Nurse. She was also eventually replaced by a non-disabled nurse. (FAC at ¶¶s 19-23, 26, 28, 31). At this stage, Plaintiff's complaint states a claim to relief that is plausible on its face.

13

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reconsideration is GRANTED in part.